565 So.2d 1012 (1990)
In re TUTORSHIP OF INGRAHAM. (Three Cases)
Nos. 89 CA 1319, 89 CW 2152 and 90 CA 0726.
Court of Appeal of Louisiana, First Circuit.
June 26, 1990.
*1013 C. David Schumacher, Carl J. Schumacher, Jr., and John E. Jackson, New Orleans, for Lindsay I. Daviddefendant-appellant.
David Paddison, Covington, and Darryl Tschirn, Metairie, for Brenda H. Ingrahamplaintiff-appellee.
Before CARTER and ALFORD, JJ., and DOHERTY,[*] J. Pro Tem.
CARTER, Judge.
These consolidated actions arise out of a tutorship proceeding.

FACTS
On March 19, 1987, Michael Richard Ingraham, II, died intestate as a result of a barge explosion on Lake Maurepas. Ingraham was survived by his wife, Brenda, and three children. At the time of Ingraham's death, Brenda was seven months pregnant with the couple's fourth child, who subsequently was born. Shortly after her husband's death, Brenda moved from the family's home in St. Tammany Parish and temporarily resided with Lindsay I. David, Ingraham's sister, in Pass Christian, Mississippi. While in Mississippi, *1014 David introduced Brenda to the Ingraham's family attorney, John E. Jackson, Jr.
On April 14, 1987, Jackson filed, in this tutorship proceeding, a petition for confirmation as natural tutrix and for appointment of an undertutrix, seeking to confirm Brenda as natural tutrix and to appoint David as undertutrix. By order, dated April 14, 1987, the trial judge confirmed Brenda as the natural tutrix of the minor children and appointed David as undertutrix.[1] On that same day, Brenda, individually, as administratrix of the succession of Ingraham, and as natural tutrix of the minor children, entered into a contract with Jackson for legal services in connection with the death of Ingraham.[2] David, as undertutrix, also concurred in and signed the agreement with Jackson. The agreement provided for a sliding scale fee, based upon the amount of recovery, and limited the attorney's fees to 25% of any pre-trial settlement.[3]
Thereafter, Jackson associated the Schumacher law firm to assist him in the representation of Brenda and the minor children in a federal court action against the owner of the barge which exploded and assigned 50% of his rights under the legal services agreement with Brenda to the Schumacher law firm. At the end of November, 1988, Brenda sent handwritten letters to Jackson and the Schumacher firm, advising that she was dismissing each as her attorney and had retained other counsel.[4] On November 27, 1988, Brenda, individually, as tutrix of the minor children, and as administratrix of the succession of Ingraham, entered into a retainer agreement with Randy J. Ungar. The Ungar retainer agreement provided for attorney's fees of 40% of any amounts collected in connection with the barge explosion and the death of Ingraham on March 19, 1987. Brenda subsequently notified Jackson by letter, dated December 2, 1988, that Darryl Tschirn would, from that point forward, be representing Brenda and her children and requested that Jackson relinquish the file to Tschirn.[5] The undertutrix did not concur in the dismissal of Jackson and the Schumacher firm, nor did she assent to the new contract with Ungar.[6]
On December 14, 1988, David filed a petition to set aside certain actions of the tutrix. Specifically, David opposed the dismissal of Jackson in that Brenda was without cause to terminate the contract and the actions were taken without the concurrence of the undertutrix.[7] Brenda denied the allegations *1015 of David's petition and filed a peremptory exception pleading the objections of no cause of action and no right of action on the grounds that Tschirn had withdrawn as counsel of record for the minor children.[8] On February 21, 1989, the trial judge signed an ex parte motion to dismiss the petition to set aside the actions of the tutrix for "no right or cause of action." Thereafter, David applied for writs of certiorari, prohibition, or mandamus with the First Circuit Court of Appeal, which were denied on June 14, 1988, under docket number 89 CW 0519. David then applied for writs with the Louisiana Supreme Court. On June 30, 1989, the Supreme Court granted David's application, stating:
The ruling of the district court is set aside, and the exception of no cause of action is overruled. The case is remanded to the district court for an immediate hearing on the undertutrix's motion.
On July 17, 1989, the trial court conducted a hearing pursuant to the remand and rendered judgment, dismissing David's petition to set aside the actions of the tutrix, on July 31, 1989. The trial court specifically determined that the tutrix's actions had no negative impact on the minor children and that David failed to carry her burden of proving malfeasance by the tutrix. From this adverse judgment, David appeals, under docket number 89 CA 1319, assigning the following specifications of error:
1. The trial court erred in failing to require the tutrix to set forth reasons in the minors' best interest in support of her desires to terminate the minors' contract with John E. Jackson, Jr. (La.C.C.P Arts 4265 and 4271).
2. Contrary to the manifestly erroneous conclusion of the trial court, the undertutrix demonstrated negative impact on the estate of the children by proof that the tutrix modified the obligations owed by the minors under the contingency fee contracts creating a large increase in the percentage of attorney fees owed, with an escalating cost to the children as the amount recovered is greater.
3. The trial court erroneously applied the burdens of proof and did not determine whether it was in the best interests of the minor children to modify the terms of the obligation owed by them under the contingency fee agreement with John E. Jackson law corporation.
On August 14, 1989, David filed motions for expedited appeal and to seal the record, both of which were denied on August 16, 1989. Thereafter, David applied for writs to the Louisiana Supreme Court, which were denied on August 18, 1989, under docket number 89-0C-1977.
On September 18, 1989, Brenda filed a rule to remove David as undertutrix and to appoint James Hammerstone as undertutor.[9] In response thereto, David filed a petition to have the tutrix comply with the laws of tutorship. Specifically, David alleged that on August 21, 1989, Brenda, individually and on behalf of the four minor children, entered into a settlement of the federal court action for the death of Ingraham. David requested information regarding the alleged $2 million settlement. David also filed an answer to Brenda's rule to remove her as undertutrix and to appoint Hammerstone in her stead.
A hearing on the rule to remove David as undertutrix and to appoint Hammerstone as undertutor and on the rule to disclose settlement details and to have the tutrix to comply with the law was held on October 25, 1989. The court then took the matter under advisement and ordered that the matter be refixed for argument on another *1016 day.[10] On November 15, 1989, the trial court signed the judgment, removing David as undertutrix, appointing Hammerstone as undertutor, and dismissing all other pending matters.
On November 10, 1989, David filed a motion for new trial under LSA-C.C.P. art. 1972(1) and (2). David alleged that, subsequent to the October 25, 1989, hearing, she received correspondence from counsel for the tutrix, seeking her concurrence on the settlement of the minor's claims. The trial court issued a rule to show cause order for December 6, 1989, as to why the November 15, 1989, judgment should not be set aside and a new trial ordered. The order on the rule to show cause was also signed on November 15, 1989.
On November 20, 1989, Brenda filed a petition for authority to compromise the action of the minors. Affixed to her petition was a concurrence by James Hammerstone in his capacity as undertutor. On that same day, the trial court signed a judgment authorizing the tutor to compromise the minors' actions.
On December 6, 1989, the trial court denied David's motion for new trial. David then requested written reasons for judgment on the November 15 and December 6 judgments, which was denied on December 19, 1989. Thereafter, David applied for supervisory writs with this court under docket number 89 CW 2152.[11] In her application for supervisory writs, David presented the following issues for review:
1. If the undertutor does not concur, and court approval has not been granted, can the law of tutorship be evaded by removal of the undertutor and replacement with a second undertutor who has agreed in advance to ratify the acts of the tutor? (C.C.P. Arts. 4265 and 4271)
2. Can a tutor settle a minor's claim without prior court approval? (C.C.P. Arts 4265 and 4271)
By order, dated February 20, 1990, this court granted David's writ application and consolidated the writ with the pending appeal.
On December 21, 1989, David filed another appeal, under docket number 90 CA 0726. In this appeal, David appeals the trial court judgment of November 20, 1989, authorizing the tutrix to compromise the minors' action.[12] Thereafter, pursuant to a request by this court and stipulation of the parties, the appeal under docket number 90 CA 0726 was consolidated with the appeal and supervisory writ under docket numbers 89 CA 1319 and 89 CW 2152, respectively.
We will not address each appeal and/or writ separately, nor will we discuss each assigned error individually. However, we have carefully examined each issue and, for purposes of clarity, have combined the discussion of these issues, whether raised by appeal or by writ.

LEGALITY OF TUTORSHIP
LSA-C.C.P. art. 4031 sets forth the proper venue for a tutorship proceeding for a minor domiciled in Louisiana, as follows:

A petition for the appointment of a tutor of a minor domiciled in the state shall be filed in the district court of the parish where the surviving parent is domiciled, if one parent is dead, or in the parish where the parent or other person awarded custody of the minor is domiciled, if the parents are divorced or judicially separated.
If the parents who are divorced or judicially separated are awarded joint custody of a minor, they shall petition jointly for appointment as cotutors in the district court of the parish in which the *1017 proceedings for divorce or judicial separation were instituted.
In all other cases, the petition shall be filed in the parish where the minor resides. (Emphasis added).
The comments to this article reveal that the venue in a tutorship proceeding is jurisdictional and that objections thereto may not be waived. All proceedings taken in a court of improper venue are absolute nullities.
LSA-C.C. art. 38 defines "domicile" as follows:
The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected.
LSA-C.C. art. 41 deals with a change of domicile and provides as follows:
A change of domicile from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there.
LSA-C.C. art. 42 provides a written method to express an intent to change domicile, and LSA-C.C. art. 43 states that if a written declaration is not made, "the proof of this intention shall depend upon circumstances."
It is clear under the jurisprudence of this state that residence and domicile are not synonymous. A person can have several residences, but only one domicile. Wilson v. Butler, 513 So.2d 304 (La.App. 1st Cir.1987). A change in domicile occurs when there is a change in actual residence accompanied by an intention to make a new principal establishment or home. Wilson v. Butler, supra. Additionally, a domicile, once acquired, is presumed to continue. One alleging a change in domicile has the burden of proving it, and the presumption in favor of the original domicile prevails if there is any reasonable doubt as to the change. Brown v. Brown, 378 So.2d 164 (La.App. 1st Cir.1979).
In the instant case, it is undisputed that, prior to Ingraham's death, he, Brenda, and their children were domiciled in Pearl River, St. Tammany Parish, Louisiana. Shortly after Ingraham's death, Brenda and her children temporarily resided with David in Pass Christian, Mississippi. The instant tutorship proceeding was filed in St. Tammany Parish, and the petition for confirmation states that Brenda is a domiciliary of St. Tammany Parish. The retainer agreement entered into with Jackson reveals that Brenda was residing in Mississippi at the time of the contract.
Brenda made no written declaration of domicile, therefore, we must look to the circumstances of this case to determine whether Brenda intended to make Mississippi her domicile. We have carefully reviewed the entire record and cannot say that Brenda manifested any intention to change her domicile. Brenda initially left her home in Pearl River after her husband's death. Thereafter, Brenda lived with members of his family for a short period of time and then lived in her own residence in Mississippi for four to five months. Thereafter, Brenda returned to Louisiana and has lived in Slidell since that time. The record is devoid of any evidence that, at the time the tutorship proceeding was filed, Brenda manifested any intention to change her domicile.[13]
Accordingly, we find that the tutorship was properly filed in the district court of the parish of the surviving parent's domicile, namely St. Tammany Parish.
AUTHORITY OF TUTRIX TO CHANGE AND/OR MODIFY THE CONTRACT FOR ATTORNEY SERVICES AND FEES
David contends that the tutrix was without authority to terminate Jackson and *1018 retain Ungar. David reasons that she, as undertutrix, did not approve the termination nor did she concur in the hiring of Ungar. David further contends that her concurrence or court approval is required for the tutor to modify any obligation of the minors, including a contract for attorney's fees. David reasons that, because the Jackson contract provided for 25% attorney's fees and the Ungar contract provided for 40% attorney's fees, the tutrix was required to obtain her concurrence or court approval prior to increasing the obligations of the minors.
LSA-C.C.P. art. 4265 provides that a tutor, with court approval as provided for in LSA-C.C.P. art. 4271, may "extend, renew, or in any manner modify the terms of an obligation owed by ... the minor." LSA-C.C.P. art. 4271 sets forth the procedure whereby court approval may be maintained.
Generally, there is no authority for forcing counsel on a party litigant. The right of self-representation has been recognized even in criminal cases. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). It follows that a litigant is privileged to discharge counsel almost at will, provided that it does not become a device for improper purposes such as gaining a continuance untimely and without good cause. Green v. Gary Memorial Hospital, 505 So.2d 196 (La.App. 3rd Cir. 1987). Further, neither the Civil Code nor the Code of Civil Procedure contains any specific requirement that a natural tutor must obtain prior judicial approval of any contract, including those for attorney's services. Southern Shipbuilding Corporation v. Richardson, 363 So.2d 1329 (La. App. 4th Cir.1978), affirmed, 372 So.2d 1188 (La.1979).
In Garden Hill Land Corporation v. Succession of Cambre, 306 So.2d 718 (La. 1975), the Louisiana Supreme Court noted that:
[S]ince Article 4265, Code of Civil Procedure requires court approval before compromise of a claim or lawsuit by or against a minor, it would seem that the court's approval of such compromise should coincidentally extend to approval of the fee of the attorney, so that the court might determine that both the compromise and the net effect on the minor's estate are reasonable and appropriate. [306 So.2d at 722].
Additionally, in Southern Shipbuilding Corporation v. Richardson, supra, the court held that there was no need for separate court approval of a contract for attorney's fees, since the court later approved the actual compromise as was required by LSA-C.C.P. art. 4271.
In the instant case, Brenda, as tutrix, entered into the contract for attorney's fees with John E. Jackson, and David, as undertutrix, concurred. The Jackson retainer agreement provided for attorney's fees of 25% and did not have separate court approval. Brenda subsequently, without the concurrence of the undertutrix or court approval, terminated the Jackson contract and entered into a retainer agreement with Randy J. Ungar. The Ungar retainer agreement provided for attorney's fees of 40%. Clearly, there was no separate approval for either contract for attorney's fees.
We find, however, that the tutrix did not require separate concurrence of the undertutrix or separate court approval to enter into a contract for attorney's services, to terminate a contract for attorney's services, or to modify the amount of attorney's fees, since the trial court, in approving any settlement of the minor's actions, would be required to approve or ratify any such agreements under LSA-C.C.P. art. 4271.
REMOVAL OF DAVID AS UNDERTUTRIX AND APPOINTMENT OF HAMMERSTONE AS NEW UNDERTUTOR
The grounds for disqualification, revocation, or removal of a tutor provided for in LSA-C.C.P. arts. 4231, 4232, and 4234, other than indebtedness to the minor, also apply to an undertutor. LSA-C.C.P. art. 4236.
LSA-C.C.P. art. 4231 provides for disqualification of a tutor as follows:

*1019 No person may be appointed tutor who is:
(1) Under eighteen years of age;
(2) Interdicted, or who, on contradictory hearing, is proved to be mentally incompetent;
(3) A convicted felon, under the laws of the United States or of any state or territory thereof;
(4) Indebted to the minor, unless he discharges the debt prior to the appointment;
(5) An adverse party to a suit to which the minor is a party; or
(6) A person who, on contradictory hearing, is proved to be incapable of performing the duties of the office, or to be otherwise unfit for appointment because of his physical or mental condition or bad moral character.
The provisions of paragraphs (1), (4), and (5) do not apply to the parent of the minor.
LSA-C.C.P. art. 4232 provides for the revocation of the appointment of a tutor as follows:
If a person who is not a parent of the minor is appointed tutor and fails to qualify for the office within ten days from his appointment, on its own motion or on motion of any interested person, the court may revoke the appointment and appoint another qualified person to the office forthwith.
The delay allowed in this article for qualification may be extended by the court for good cause shown.
LSA-C.C.P. art. 4234 provides for the removal of a tutor, in pertinent part, as follows:
The court may remove any tutor who is or has become disqualified; is a nonresident who has not appointed, or has left the state permanently without appointing, an agent to represent him as required by Article 4273; has become incapable of discharging the duties of his office; has mismanaged the minor's property; has failed to perform any duty imposed by law or by order of court; or if such removal would be in the best interests of the minor. (Emphasis added).
The last sentence, emphasized above, was added by Acts 1976, No. 429, which this court in In Re Redmond, 351 So.2d 1256 (La.App. 1st Cir.1977), writ denied, 353 So.2d 1341 (La.1978), interpreted to mean as follows:
In adopting the amendment, we think the legislature intended that in addition to the specific grounds for removal listed in the article the court should also be vested with a certain degree of discretion and that the interests of the interdict should be paramount.
[351 So.2d at 1257].
Nonresidency is not an enumerated ground for disqualification or removal of an undertutor; however, as set forth in LSA-C.C.P. art. 4232, a person not the parent of the minor, who fails to qualify for the office within ten days from his appointment, may have his appointment revoked. LSA-C.C.P. art. 4273 provides as follows:

A tutor who is a nonresident, or who is about to leave the state permanently, shall execute a power of attorney appointing a resident of this state to receive service of process in any action brought against him in his capacity as tutor; and may authorize this agent to represent him in all matters relating to the tutorship. A tutor who is domiciled in the state and who will be absent temporarily therefrom may similarly appoint such an agent for either or both of these purposes. In all cases, the power of attorney shall be filed in the tutorship proceeding. (Emphasis added).
In the instant case, it is undisputed that David was a nonresident. The record reveals that, although the tutorship proceeding was instituted and David was appointed undertutrix on April 14, 1987, David did not appoint an agent pursuant to LSA-C.C.P. art. 4273 until February 13, 1989. Clearly, under the applicable law, the trial judge, on his own motion or on the motion of any interested party, properly revoked the appointment of David and appointed a new undertutor for failure to comply with LSA-C.C.P. *1020 art. 4273 within the time frame provided.

AUTHORITY TO COMPROMISE
David contends that the judgment authorizing the tutrix to compromise the minors' cause of action for their father's death is manifestly erroneous. In addition to challenging the apportionment of the settlement proceeds among Brenda, the four minor children, and the attorneys, David contends that the authority to compromise was invalid because the motion for new trial on David's removal as undertutrix was pending at the time the judgment authorizing the compromise was signed. David reasons that, as such, the appointment of Hammerstone was not final at the time of his concurrence with the petition for authority to compromise and the judgment authorizing the compromise is invalid.
When a new trial is timely applied for, the judgment is not final, and this is all the more valid when the motion has been set for trial by order of the court. Kerr v. Kerr, 349 So.2d 913 (La.App. 1st Cir.1977), writ denied, 351 So.2d 157 (La.1977); Cooper v. Cooper, 158 So.2d 248 (La.App. 1st Cir.1963), writ refused, 245 La. 632, 160 So.2d 225 (1964). However, where a motion for new trial is filed before the signing of the final judgment, it is filed prematurely and has no effect. Roberts v. St. Joseph Academy School Board, 424 So.2d 1241 (La.App. 1st Cir.1982); Deville v. Babineaux, 396 So.2d 978 (La.App. 3rd Cir. 1981); Bordelon v. Dauzat, 389 So.2d 820 (La.App. 3rd Cir.1980); Chamblee v. Chamblee, 340 So.2d 378 (La.App. 4th Cir. 1976).
Furthermore, the Supreme Court of Louisiana held that any previously existing defect arising from a premature motion for appeal (i.e. one taken before the signing of the judgment) is cured once the final judgment has been signed. Overmier v. Traylor, 475 So.2d 1094 (La.1985). This holding was analogized to a motion for new trial in Hanson v. Perkins, 484 So.2d 705 (La.App. 1st Cir.1985). In Hanson, this court noted that the technical prematurity of the motion for new trial is cured by the signing of the judgment. See Harbour v. Normal Life of Louisiana, 454 So.2d 1208 (La.App. 3rd Cir.1984). See also Harris v. Sears, Roebuck & Company, 485 So.2d 965 (La. App. 5th Cir.1986), writ denied, 488 So.2d 205 (La.1986).
In the instant case, the hearing on the rule to remove David and appoint Hammerstone was held on October 25, 1989, and argued on November 8, 1989. On November 8, 1989, the trial judge orally ruled on the motion, removing David as undertutrix and appointing Hammerstone in her stead. Thereafter, on November 10, 1989, David filed a motion for new trial. On November 15, 1989, the trial judge signed the judgment removing David and appointing Hammerstone. On that same day, the trial judge issued a show cause order for December 6, 1989, as to why the November 15 judgment should not be set aside and a new trial ordered. On November 20, 1989, Brenda and Hammerstone sought and obtained court authority to compromise the action of the minors. Thereafter, on December 6, 1989, the trial judge denied the motion for new trial previously filed.
While David's motion for new trial was filed prematurely, the technical prematurity of the motion for new trial was subsequently cured by the signing of the final judgment. However, the motion for new trial was subsequently denied, and the judgment removing David as undertutrix and then appointing Hammerstone as new undertutor was a final judgment. As a result, Hammerstone's appointment was proper.
Having determined that Hammerstone was the proper undertutor at the time the petition for authority to compromise was filed, we must determine whether the laws of tutorship were followed and whether the authority to compromise the actions of the minors granted by the trial judge was valid.
LSA-C.C.P. art. 4265 provides for the compromise of actions and modifications of obligations of a minor as follows:
With the approval of the court as provided in Article 4271, a tutor may compromise *1021 an action or right of action by or against the minor, or extend, renew, or in any manner modify the terms of an obligation owed by or to the minor.
LSA-C.C.P. art. 4271 provides as follows:
The tutor shall file a petition setting forth the subject matter to be determined affecting the minor's interest, with his recommendations and the reasons therefor, and with a written concurrence by the undertutor. If the court approves the recommendations, it shall render a judgment of homologation. The court may require evidence prior to approving the recommendations.
If the undertutor fails to concur in the tutor's recommendations, the tutor shall proceed by contradictory motion against him. After such hearing and evidence as the court may require, the court shall decide the issues summarily and render judgment.
In the instant case, on November 20, 1989, the tutrix filed a petition setting forth the proposed compromise of the wrongful death claim, her recommendations for the compromise, and the proposed apportionment of the settlement proceeds, together with a written concurrence by Hammerstone, recently appointed undertutor.[14] On that same day, the trial court rendered judgment, approving the compromise for $60,000.00 per minor to be placed in an educational trust and $40,000.00 per minor to be invested with the Hibernia National Bank Trust Department and distributed in accordance with the laws of tutorship.
After carefully reviewing the entire record in this matter, we find that the tutrix properly complied with the laws of tutorship and obtained the requisite judicial approval of the compromise. However, our inquiry does not end here. Although we find that the tutrix properly presented her *1022 proposal as to the distribution of the settlement proceeds, we must examine whether the trial judge correctly determined that the settlement proceeds were properly apportioned among Brenda, as surviving spouse, and the four minor children and whether the trial judge approved or ratified the attorney's fees contracts.
Apportionment of Settlement Proceeds
The record reveals that the claims of Brenda, as surviving spouse, and her minor children were compromised for the cash payment of $1,661,387.80 and the purchase of an annuity, paying Brenda $2,000.00 per month for life or for a minimum of thirty years. Additionally, Brenda would receive $300,000.00 in cash on October 2, 2019. The petition for authority to compromise shows that "after attorney's fees," Brenda and the four minor children would realize a cash payment of $861,387.80, plus the annuity. An educational trust of $60,000.00 would be established for each minor child, and $40,000.00 would be invested with Hibernia National Bank to be distributed by court order for each minor child.
We find that the trial court erred in approving this apportionment of the settlement proceeds. Of the $2,000,000.00 in total settlement proceeds, the four minor children collectively received only 20%. Clearly, the four minor children, most of whom were of a tender age at the time of their father's death and one of whom was born posthumously, were entitled to a larger portion of the settlement proceeds. We have carefully reviewed the entire record and find that the four minor children are entitled to a minimum of $200,000.00 each, subject to their portion of attorney's fees. Judicial Approval or Ratification of Attorney's Fees
The record reveals that Brenda and the minor children realized a cash payment of $861,387.80 from the settlement proceeds, which presumably revealed an attorney's fee of $800,000.00 or 40% of the total settlement proceeds. Because the contracts for attorney's fees (as concerns the minors) did not have separate judicial approval, they were required to be approved in the final judgment authorizing the compromise. However, the petition for authority to compromise, the actual compromise, and the judgment authorizing the compromise are silent as to specific delineation of the amount or percentage of attorney's fees.
We find, therefore, that the trial court erred in approving the substance of the compromise without addressing the reasonableness and appropriateness of the attorney's fees as concerns the minors. We have examined the entire record and find that the reasonable and appropriate attorney's fees attributable to the four minor children is 25%.[15]

CONCLUSION
For the above reasons, the trial court judgment of November 20, 1989, is amended to increase each minor child's portion of the settlement proceeds from $100,000.00 (after attorney's fees were deducted) to $200,000.00, subject to attorney's fees of 25%. In all other respects, the judgment of November 20, 1989, and all other judgments appealed from are affirmed. Additionally, the applications for writs are denied.
AMENDED AND, AS AMENDED, AFFIRMED.
WRIT DENIED.
NOTES
[*] Judge Lewis S. Doherty, III, retired, is serving as judge pro tem by special appointment of the Louisiana Supreme Court to fill the vacancy created by the temporary appointment of Judge Melvin A. Shortess to the Supreme Court.
[1] On February 13, 1989, David, who is a resident and domiciliary of Pass Christian, Mississippi, appointed William A. Ingraham, Jr., a domiciliary of St. Tammany Parish, as agent for service of process in her capacity as undertutrix pursuant to LSA-C.C.P. art. 4273.
[2] Jackson was also retained to represent Ingraham's brother, William, who was injured in the explosion which killed Ingraham.
[3] The contract provided, in pertinent part, as follows:

4. If the Law Firm recovers money for you, which is greater than your costs and expenses (see paragraph 3), you will pay the Law Firm a legal fee. The fee will be based on a percentage of the net recovery (the total recovered for all clients named in this Agreement, minus your costs and expenses.) The fee will be as follows:
33 1/3% of the first $250,000 net recovery; 25% of the next $250,000 net recovery; 20% of the next $500,000 net recovery;
Fee on net recoveries exceeding $1,000,000.00 will be determined by the court.
5. The legal fees will be reduced to 25% of the net recovery if this matter is settled without trial.
[4] The letters were postmarked November 26 and November 29, 1988, respectively.
[5] The record does not contain specific information regarding any assignment of Ungar to Tschirn; however, it is undisputed that Ungar associated Tschirn to assist in representing Brenda and the minor children in the federal court action. Tschirn also represented numerous other plaintiffs in the suit.
[6] On December 7, 1988, Jackson and the Schumacher firm withdrew as counsel of record in the federal court action.
[7] David's objections also sought to prohibit Tschirn from undertaking the representation of the minor children in that Tschirn represented another plaintiff, who alleged negligence on the part of Production Management in causing the explosion aboard the barge. David reasoned that, in so doing, Tschirn had a conflict of interest between the minor children and the other plaintiff because Ingraham was the senior representative of Production Management on the barge at the time of the explosion.
[8] On February 17, 1989, Tschirn withdrew as counsel of record for the estate of Ingraham and for the minor children, and Randy J. Ungar was named as counsel of record in Tschirn's place.
[9] Hammerstone is the maternal grandfather of the four minor children.
[10] On November 8, 1989, the parties presented oral argument and submitted the matter for decision.
[11] David actually applied for writs to the Louisiana Supreme Court, which transferred the matter to this court for action.
[12] The trial court denied David's petition for appeal on the grounds that David, having been removed as undertutrix, has no standing in this matter.
[13] We note, however, that in the complaint filed in the federal court action for damages for the death of Ingraham, Brenda alleged she was domiciled in Mississippi and obtained federal court jurisdiction based on diversity of citizenship.
[14] The petition for authority to compromise set forth the following pertinent provisions:

III.
The claim of petitioner, and her minor children, has been compromised by the payment of ONE MILLION SIX HUNDRED SIXTY ONE THOUSAND THREE HUNDRED EIGHTY SEVEN DOLLARS ($1,661,387.80) AND 80/100 Cash, and the purchase of an annuity, paying Brenda Ingraham $2,000.00 per month for life, guaranteed for 30 years or her life, whichever is longer, plus the sum of THREE HUNDRED THOUSAND ($300,000.00) DOLLARS in cash, payable to Brenda Ingraham on October 2, 2019 (30 years) said annuities are written by New York Life Insurance Company. The total cost of this annuity was $338,612.20.
IV.
After attorneys fees, petitioner and the minor children, realized a cash payment of $861,387.80, plus the annuity.
V.
Petitioner suggests that an educational trust be established on behalf of the minors with the Trust Department of the Hibernia National Bank of New Orleans, said trust stating that each of the minor children receive $60,000.00, cash, to be invested by the trust department of the Hibernia National Bank, payable to each of the children upon obtaining the age of 25, with the only withdrawals to be made for the purpose of educational tuition expenses for the children.
VI.
Petitioner further suggests that each child receive an additional $40,000.00 to be invested with the Hibernia National Bank Trust Department and distributed by Court Order in accordance with the laws of the tutorship with no other restrictions.
VII.
The explanation of the terms of the suggested trust agreement is as follows:
`The primary purposes of this trust are to provide the beneficiary with an education, to enable her to maintain a respectable, but not excessive, standard of living, to provide her with her medical needs, to provide any emergency assistance which she might need. To that end, the trustee is directed to disburse so much of the income, and if the income from the beneficiary's trust and from her funds from other sources are insufficient, then a sufficient amount of principal (1) to provide the beneficiary with a good education, including vocational training and/or an undergraduate college education, and also such advanced or graduate degrees as she may have the aptitude for and interest in pursuing, and to that end provide funs (sic) for tuition, living expenses, books and a reasonable amount of spending money in accordance with the standards of the school and the beneficiary's station in life, (2) to provide for her medical needs, (3) to provide for any emergencies, (4) to enable the beneficiary to maintain her standard of living.
The trust created herein can terminate upon the earlier of the death of the beneficiary or date upon which the beneficiary attains the age of 25 years. Beneficiary may elect to continue the trust beyond the age of 25 years.'
[15] We note that Brenda, in her contract for attorney's fees with Ungar, obligated herself for a 40% attorney's fee. The contract for attorney's fees insofar as it concerns Brenda is not an issue before this court. The dispute between Jackson and the Schumacher firm and Ungar as to the apportionment of attorney's fees among the attorneys is also not before this court on appeal or by writs, but is the subject of pending litigation in the United States District Court.