REVISED, April 8, 1998

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-31006

NICOLE MARIE CARTER, as Administratrix of and the
Estate of Vergil Braud; JACQUELINE ESTEEN, individually
and as tutrix of the minor child Tahara Braud; CHRISTY FRANCIS,

Plaintiffs-Appellants,

and

TAHARA BRAUD,

Appellant,

versus

KEVIN FENNER; JOEL TALLANT; CITY OF NEW ORLEANS,

Defendants-Appellees.

NICOLE MARIE CARTER, Administratrix of and the Estate of
Vergil Braud,

Plaintiffs,

versus

KEVIN FENNER; et al.,

Defendants,

KEVIN FENNER; JOEL TALLANT; CITY OF NEW ORLEANS,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

March 6, 1998

Before EMILIO M. GARZA, STEWART, and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This appeal asks us to determine whether (1) a consent judgment entered into between

plaintiff-appellant Nicole Marie Carter and defendant-appellee City of New Orleans was properly

vacated by the district court pursuant to Federal Rule of Civil Procedure 60(b); (2) the district court

should have set aside the jury verdict in the underlying wrongful death action and granted a judgment as a matter of law and/or a new trial; and (3) the district court erred in admitting certain testimony at trial. Addressing each contention in turn below, we AFFIRM the district court.

The written consent judgment in question was confected at the culmination of pretrial settlement negotiations between the parties—purportedly settling the wrongful death claim which Carter brought on behalf of her son for $1,000,000 plus interest from the date of judicial demand. Shortly thereafter, the City challenged the validity of the consent judgment. The district court recalled, vacated, and set aside the consent judgment pursuant to Rule 60(b)(1), finding that the consent judgment could not stand due to mistake and inadvertence on the part of both parties to the agreement. Because we find that the consent judgment was void as a matter of Louisiana law, we AFFIRM the judgment of the district court pursuant to Rule 60(b)(4). In addition, finding that Carter did not present evidence sufficient to show that the jury's verdict is inconsistent with the applicable law, we AFFIRM. Finally, we conclude that the district court made no error in admitting evidence at trial to warrant granting Carter's request for judgment as a matter of law or a new trial.

## I.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 5, 1992, New Orleans police officer Kevin Fenner shot and killed Vergil Braud.[1] Carter subsequently brought suit on behalf of her minor son, Vergil Carter and the Estate of Vergil Braud. The defendants in the suit were Fenner; the City of New Orleans ("City"); Arnesta Taylor, the City Police Chief; and Joel Tallant, Fenner's companion police officer.[2] Trial of the case was set

---

[1]The circumstances surrounding the shooting are a matter of great dispute between the parties. Fenner testified at trial that he shot Braud to protect his partner, Joel Tallant, and that Braud was actually pulling Tallant's gun out of its holster at the time Fenner shot him. Fenner offered further testimony that Braud's behavior was of a combative and threatening nature such that Fenner believed himself and/or Tallant to be in danger. Carter's brief, on the other hand, maintains that witnesses at trial testified that Fenner beat Braud on the head while his hands were placed on the top of the police car and otherwise used excessive force on the decedent. Carter further suggests that Braud did not pose a threat to the officers at the time of his shooting.

[2]A companion suit was also filed in relation to the October 5 shooting incident. Except for Taylor, the defendants to the companion suit were the same as those named in the primary action. The

for May 2, 1994—which also happened to be inauguration day for Mayor-Elect Marc H. Morial and other recently elected city officials. Prior to the trial date, the parties entered negotiations toward settlement. As the result of a meeting held on April 29, 1994 between Carter's attorney and then Mayor Sidney J. Barthelemy, an agreement was reached which was later incorporated into a written consent judgment between the parties. Acting just three days prior to the end of his tenure in office, Barthelemy authorized former City Attorney Kathy Torregano to settle the case.[3] The resulting consent judgment was signed by Carter's attorney— Sonje Wilkerson—and Torregano. Receiving notification of the consent judgment that same day, the court canceled the jury trial. The consent judgment was presented to the court on May 2, 1994 and filed on that date as well.

On April 5, 1994—after his election, but prior to his taking the oath of office—Morial had requested in writing that Barthelemy not bind the City to any large monetary or policy contracts in the waning days of Barthelemy's administration.[4] Thus, the City decided to contest the agreement when new City Attorney Avis M. Russell brought the consent judgment to Morial's attention. Shortly after the consent judgment had been signed and entered by the district court judge, the City—acting under its new administration—chose not to appeal the judgment, but instead moved to have the consent judgment set aside pursuant to Rule 60(b).

plaintiffs, in addition to Carter, included Jacqueline Esteen (the mother of Vergil Braud), in her individual capacity and as tutrix of Tahara Braud (Vergil Braud's minor sister), and Christy Francis (major sister of Vergil Braud). These two suits were consolidated for trial. On May 13, 1997, Esteen, Tahara Braud, and Francis—as appellants in this action—filed a notice with this court pursuant to Fed.R.App.P. 28(i) adopting all portions of Carter's brief relating to the trial on the merits, but not those relating to the consent judgment. Thus, our determination of the issues that stem from the trial on the merits apply to Esteen, Tahara Braud, and Francis' claims as well as to Carter's.

[3]In his testimony before the trial court, Barthelemy acknowledged instructing Torregano to settle the case for $1,000,000. He did not, however, recall discussing interest attached to the $1,000,000 figure. Barthelemy allowed that he did not personally prepare the judgment, but that the City Hall attorneys did so.

[4]The record includes two letters dated April 5, 1994 from Mayor-Elect Morial to Barthelemy. The letters referenced two possible commercial contract negotiations between the City and other entities and requested that all contracts be placed on hold pending the arrival of the new administration. Claiming to have previously requested the same, Morial reiterated that the City should not sign any new contracts between April 5 and May 2, 1994.

3

The Morial administration argued in its pleadings to annul the judgment that the written request to Barthelemy amounted to a "contract" between the two administrations and that the consent agreement and subsequent judgment for Carter was tantamount to a "breach" of such contract.[5] Further, the City argued that pursuant to Rule 60(b)(1), the consent judgment between Carter and the City suffered from "mistakes" or "inadvertence" and lacked the requisite "meeting of the minds" in the following respects: (1) it calls for "interest from the date of judicial demand," a factor which would increase the settlement sum to Carter by about 20%; (2) it fails to address all of the parties, namely defendant Taylor;[6] and (3) it directs payment to Carter in her role as mother of Vergil Carter in an attempt to discharge a debt owed to her minor child contrary to Louisiana law. The City also argued that the settlement was void pursuant to Rule 60(b)(4) because the plaintiff failed to comply with Louisiana's requirements for establishing a valid tutorship for the child, and in failing to obtain prior state court approval of the minor's settlement.

After an evidentiary hearing, the district court granted the City relief from the consent judgment based on the aforementioned mistake and inadvertence. Alternatively, the district court held that the consent judgment was void under Rule 60(b)(4) for want of compliance with the Louisiana Code of Civil Procedure Article 4271 *et al*.

After the consent judgment was set aside, Carter sought an appeal in this court pursuant to 28 U.S.C. § 1291 as construed by the collateral order doctrine.[7] Finding that the order granting the City's Rule 60(b) motion did not meet the requirements of the doctrine, this court dismissed Carter's

---

[5]In his testimony, Barthelemy denied having entered into any such agreement with Morial that would have prevented him from making binding agreements without Morial's express authorization.

[6]The judgment recites that upon satisfaction of the judgment, the suit would be dismissed as to defendants "City of New Orleans, Kevin Fenner and Joel Tallant" without mention of releasing Taylor, who was also a named defendant in the suit.

[7]Under the collateral order doctrine, this court has jurisdiction to consider appeals of non-final judgments "that are conclusive, that resolve important questions completely separate from the merits, and that would render such important questions effectively unreviewable on appeal from final judgment in the underlying action." Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867, 114 S.Ct. 1992, 1995-96 (1994).

**4**

appeal. The underlying wrongful death claim proceeded to a trial on the merits in July 1996, resulting in a jury verdict in favor of the defendants. On August 27, 1996, the district court entered judgment in favor of defendants, dismissing plaintiffs' complaint with prejudice and costs. On behalf of her minor son—Vergil Carter, Carter timely brings this appeal from the judgment of the district court that set aside the consent judgment and the jury's verdict in the trial on the merits.

## II.

### STANDARD OF REVIEW

Carter disputes the City's assertion that Rule 60(b)(1), (4) and (6) afford bases for relief from the consent judgment. Before we can reach the question regarding whether the consent judgment is voidable under the discretionary prongs of Rule 60(b)(1), we must answer the threshold question whether the consent judgment is void as a matter of law under the nondiscretionary prong of Rule 60(b)(4).

This court is not often confronted with Rule 60(b)(4) review of a final judgment and has considered the application of Rule 60(b)(4) in the consent judgment context only in the rarest and most tangential of circumstances. See United States v. 119.67 Acres of Land, 663 F.2d 1328, 1331 (5th Cir. 1981) (Unit A) (interpreting a Rule 60(b) motion to set aside a consent judgment as one for relief under 60(b)(4) because "[a] judgment is not void simply because it is erroneous, but only where the rendering court lacked subject matter jurisdiction or acted in a manner inconsistent with due process of law"). We therefore look not only to our own precedent, but to the law of our sister circuits in determining our standard of review. Such sources indicate that we review the district court's ruling on a Rule 60(b)(4) motion de novo. See, e.g., Wilmer v. Board of County Comm'rs, 69 F.3d 406, 409 (10th Cir. 1995). This circuit has stated:

> Typically, "[m]otions under Rule 60(b) are directed to the sound discretion of the district court, and its denial of relief upon such motion will be set aside on appeal only for abuse of that discretion." Seven Elves v. Eskenazi, 635 F.2d 396, 402 (5th Cir. 1981). When, however, the motion is based on a void judgment under rule 60(b)(4), the district court has no discretion, the judgment is either void or it is not.

Recreational Properties, Inc. V. Southwest Mortgage Services Corp., 804 F.2d 311, 313-14 (5th Cir. 1986). Unlike motions pursuant to other subsections of Rule 60(b), Rule 60(b)(4) motions leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not. The Seventh Circuit has explained that when the motion is pursuant to Rule 60(b)(4), however, the review is plenary and courts have little leeway as it is a per se abuse of discretion for a district court to deny a motion to vacate a void judgment. United States v. Indoor Cultivation Equipment From High Tech Indoor Garden Supply, 55 F.3d 1311, 1317 (7th Cir. 1995). A judgment is void for purposes of Rule 60(b)(4) if the court that rendered it entered an order outside its legal powers. Id. at 1316; In the Matter of Edwards, 962 F.2d 641, 644 (7th Cir. 1992) . The Ninth Circuit's approach is also instructive: "We review de novo . . . . a district court's ruling upon a Rule 60(b)(4) mo tion to set aside a judgment as void, because the question of the validity of a judgment is a legal one." Export Group v. Reef Industries, Inc., 54 F.3d 1466, 1469 (9th Cir. 1995).

### III.

### RULE 60(B)(4) RELIEF

Because there is a paucity of case law construing Rule 60(b)(4) in our circuit, we find it useful to first consider the language and purpose of the rule. Rule 60(b) states in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence. . . . (3) fraud . . . misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged. . . .or (6) any other reason justifying relief from operation of the judgment. . . .

Most circuits have interpreted Rule 60(b) quite narrowly, affording relief from final judgments only in the most specific circumstances. See VTA, Inc. v. Airco, 597 F.2d 220, 225 (10th Cir. 1979). These courts have noted that to succeed on a Rule 60(b) motion, a movant first " 'must show that his motion is timely, that he has a meritorious defense to the action, and that the opposing party would not be unfairly prejudiced by having the judgment set aside.' " National Credit Union Admin.

Bd. v. Gray, 1 F.3d 262, 264 (4th Cir. 1993) (quoting Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987)). A fourth threshold showing, "exceptional circumstances," is sometimes noted. See, e.g., Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984).

Suggesting that the City does not present sufficient grounds to have the district court set aside the consent judgment, Carter appears to invoke these threshold considerations. In the instant matter, Carter suggests that the City's Rule 60(b) motion is a thinly veiled attempt to use Rule 60(b) as a substitute for a timely appeal which the City simply allowed to lapse. While the City did not file a notice of appeal within thirty days after entry of judgment provided for in Federal Rule of Appellate Procedure 4(a), its motion pursuant to Rule 60(b) was timely. As the City notes, its Rule 60(b) motion was filed less than four months after entry of the judgment—well within the one year time frame prescribed by Rule 60. By failing to pursue an appeal, the City limited itself to one avenue of relief to contest the judgment. We are not convinced, however, that the City's use of the Rule 60(b) motion instead of an appeal indicates a questionable motive as Carter suggests. Further, pursuant to the even more expansive time limitations for filing a motion pursuant to Rule 60(b)(4), it is clear that the City's motion was not stale.

Though Carter's argument is itself without merit, we will address the important timeliness considerations associated with motions brought pursuant to Rule 60(b). The First Circuit has recognized:

> Rule 60(b)(6) may not be used as a back-door substitute for an omitted appeal, and, in all but the most exceptional circumstances, a party's neglect to prosecute a [timely] appeal will bar relief under the rule.

Hoult v. Hoult, 57 F.3d 1, 3 (1st Cir. 1995) (quoting Cotto v. United States, 993 F.2d 274, 277 (1st Cir. 1993)). Motions brought pursuant to Rule 60(b)(4), however, constitute such exceptional circumstances as to relieve litigants from the normal standards of timeliness associated with the rule. While Rule 60(b)(1) motions must be brought within one year, we have held that motions brought pursuant to subsection (4) of the rule have no set time limit. This court has explained that " '[t]here is no time limit on an attack on a judgment as void. The one-year limit applicable to some Rule 60(b)

**7**

motions is expressly inapplicable, and even the requirement that the motion be made within a "reasonable time," which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion.' " New York Life Insurance Company v. Brown, 84 F.3d 137, 142-43 (5th Cir. 1996) (quoting Briley v. Hidalgo, 981 F.2d 246, 249 (5th Cir.1993)). Other courts have noted simply that "[u]nlike its counterparts, Rule 60(b)(4), which provides relief from void judgments, 'is not subject to any time limitation.' " Orner v. Shalala, 30 F.3d 1307, 1310 (10th Cir. 1994) (quoting V.T.A., Inc., 597 F.2d at 224 n. 9 and accompanying text). While failing to prescribe concrete time limitations, the courts have established that the normal temporal considerations do not apply in the Rule 60(b)(4) context.

Under Rule 60(b)(4), this court will generally look toward two factors to determine voidness. The New York Life court stated that " '[a] judgment "is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or it acted in a manner inconsistent with due process of law." ' " Id. at 143 (quoting Williams v. New Orleans Public Serv., Inc., 728 F.2d 730, 735 (5th Cir. 1984)). The City, however, did not allege such jurisdictional defects or constitutional deficiencies in its motion, but instead insisted that Carter's own procedural failures rendered the judgment void. Some circuits have noted that a judgment is void if the rendering court was powerless to enter it. VTA, Inc., 597 F.2d at 224. While such holdings most obviously allude to a jurisdictional defect, they allow enough room to capture within their reach situations where the parties' failure to follow relevant law or procedure in securing the judgment will undermine its ultimate validity. Such instances fit into the slightly less restrictive definition offered by the Seventh Circuit when it declared that "[a] void judgment is one which, from its inception, was a complete nullity and without legal effect." United States v. Zima, 766 F.2d 1153, 1159 (7th Cir. 1985).

While relief under Rule 60(b) is considered an extraordinary remedy, this court has held that the rule should be construed in order to do substantial justice. See, e.g., Greater Baton Rouge Gold Ass'n v. Recreation & Park Comm'n., 507 F.2d 227, 228-29 (5th Cir. 1975). We have counseled in the past, however, that "[t]he desire for a judicial process that is predictable mandates caution in

reopening judgments." Bailey v. Ryan Stevedoring Company, Inc., 894 F.2d 157, 160 (5th Cir. 1990) (quoting Fackelman v. Bell, 564 F.2d 734 (5th Cir.1977)) (internal citation omitted). The First Circuit has also explained that "[i]n the interests of finality, the concept of void judgments is narrowly construed." United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 661 (1st Cir. 1990) (quoting United States v. Berenguer, 821 F.2d 16, 22 (1st Cir. 1987)). The district court in the instant matter provided a related admonition when it further noted that such hesitance to reopen final judgments is "especially so in cases where a suit is terminated prior to adjudication on the merits." See Seven Elves, Inc., 635 F.2d at 403. As the Eleventh Circuit has articulated, the provisions of Rule 60(b) must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments and the "incessant command of the court's conscience that justice be done in light of all the facts." Griffin v. Swim-Tech Corporation, 722 F.2d 677, 680 (11th Cir. 1984).

**IV.**

**LOUISIANA LAW REGARDING COMPROMISE OR SETTLEMENT OF A MINOR'S CLAIM**

As noted above, the underlying wrongful death suit that is the basis for this litigation resulted in a consent judgment, the proceeds from which are to benefit the five year old son of the deceased. It is axiomatic under Louisiana law that a person compromising or settling the claim of a minor child shall follow certain explicit rules. In cases where such protections are not observed, "[t]he courts of Louisiana have been most protective of the minor's interests in the area surrounding settlement of claims, and have not hesitated to nullify any settlement or compromise that was not judicially approved." Leonard Oppenheim, The Basic Elements of Tutorship in Louisiana, 44 Tul.L.Rev. 452, 493 (1970).

We thus find it prudent to examine the requirements set forth by Louisiana law for settlement of a minor's claim to determine whether such procedures were properly met. The Louisiana Code of Civil Procedure details the manner in which the claims of a minor may be compromised or settled. The statute imposes upon parental administrators the duties and obligations of legally-appointed tutors. Article 4265 allows that "with the approval of the court as provided in Article 4271, a tutor

**9**

may compromise an action or right of action by or against the minor, or extend, renew, or in any way modify the terms of an obligation owed by or to the minor." Article 4271, in relevant part, further prescribes:

> The tutor shall file a petition setting forth the subject matter to be determined affecting the minor's interest, with his recommendations and the reasons therefor, and with a written concurrence by the undertutor. If the court approved the recommendations, it shall render a judgment of homologation. . . .

The statutory requirements for compromising and settling the claims of a minor are rigorous because of "the general policy of our law to protect all minors from the possible consequences of immaturity[.]" Johnson v. Ford Motor Company, 707 F.2d 189, 194 (5th Cir. 1983) (quoting State in Interest of Dino, 359 So.2d 586, 593 (La. 1978) (footnote omitted), cert. denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978)).

Carter urges this court that at the time the consent judgment was confected, the necessary tutorship proceedings regarding the claims of her minor son had occurred. Indeed, the record indicates that on October 8, 1992, Carter filed a Petition for Small Tutorship of Vergil Carter in Louisiana State Court, Orleans Parish. Such petition was approved by order of the court on October 8, 1992, and Carter was properly appointed tutor of her minor son pursuant to the court's Letter of Tutorship signed on October 9, 1992. Carter clearly completed the first step required by Louisiana law to settle the claim of her minor son. As the Johnson court admonished, however, "the tutorship arrangement is not in itself sufficient protection of the unemancipated minor's interests. The Louisiana Courts must, under Article 4271, maintain a careful oversight of the interests of the minors brought before them by parents or tutors." Id. at 194.

Carter failed to follow the remaining statutory requirements for compromising the claim of her son. Namely, she did not seek the prior judicial approval necessary for settling a minor's claim. Thus, the state court was not allowed to exercise its oversight of the minor's interests prior to the confection of the consent judgment. Such a failure is fatal in this context because of the affirmative judicial obligation to review a tutor's requests regarding the protected interests of the minor. The

**10**

"courts [are] the final preventative from unrestrained and unwise compromise of the minor's interests." Id. at 194 (citing Oppenheim). Such keen judicial examination is meant to offer protection from both self-interested tutors seeking to augment their own personal wealth and well-meaning tutors who may be unaware of the potential pitfalls associated with a particular settlement. Ultimately, the statute and the jurisprudence elevate the protection of the delicate interests of the minor over all other considerations. This court has found:

> For adults functioning on behalf of minors there remains a continuing duty to act in the best interests of the child-- "as a prudent administrator," La.Code.Civ.Proc. art. 4262--and to seek and obtain *prior* court approval under 4271 before compromising those interests. *Compromises entered into absent these protections are of no legal effect. . . .* 'the courts of Louisiana have been most protective of the minor's interest in the area of settlement of claims and have not hesitated to nullify any settlement or compromise that was not judicially approved.'

Id. (emphasis added).

The Achilles' heel of the appellant's situation lies in her failure to obtain state court approval of the settlement agreement *prior* to confecting the federal consent judgment with the City. As the Johnson court makes clear, establishing tutrix status with regard to the minor does not in and of itself meet the explicit statutory requirements for compromise and settlement of such claims. Because Carter did not obtain the required judicial approval of the settlement agreement from the state court in which she filed her Petition for Small Tutorship, the consent judgment is necessarily of no legal effect.

Citing Southern Shipbuilding Corp v. Richardson, 372 So.2d 1188 (La. 1979), Carter suggests that the failure to obtain court approval does not disturb the validity of the agreement because no monies have yet been disbursed with relation to the settlement. She further urges that Louisiana case law supports the proposition that the tutor or tutrix may petition for state court approval of a minor settlement on a timely basis after settlement has been reached and prior to satisfaction of the settlement terms. See In re Tutorship of Ingraham, 565 So.2d 1012 (La.App. 1st Cir. 1990); Succession of Helmers, 637 So.2d 1302 (La.App. 4th Cir. 1994). We find that Carter

has misunderstood the proposition for which these cases stand. <u>Southern Shipbuilding</u>, the case which best supports Carter's argument, suggests that tutor qualification may be obtained at the same time that court approval is sought after a "tentative settlement has been agreed upon." 372 So.2d at 1190. The consent judgment in question, however, is not a tentative settlement. Despite the fact that no funds have been dispersed to Carter by the City, the judgment was finalized in federal court before the agreement was approved *in any form*, by the state court. Noting that she has merely confected an agreement in her role as tutrix, Carter suggests that the appropriate remedy in the case is not to invalidate the settlement agreement, but to allow the plaintiff to seek approval of the minor settlement, if state law applies. She further urges that there is no Louisiana law mandating that court approval under article 4271 be obtained at the time the settlement is reached. Carter is correct in her observation that article 4272 requires a tutor to obtain court approval before receiving money on behalf of a minor. Article 4272 provides:

> In approving any proposal by which money will be paid to the minor, the court may order that the money be paid directly into the registry of the court for the minor's account, to be withdrawn only upon approval of the court and to be invested directly in an investment approved by the court.

Carter apparently understands this article as requiring approval only in relation to the disbursement of funds; however, the case law which she brings to our attention does not support her contention. We therefore disagree with such interpretation. A belated request for state court permission to disburse funds of the minor will not cure an earlier failure to obtain permission to compromise the minor's claim itself. Without such prior approval, the statutory directive requiring judicial oversight of minor settlements would be rendered meaningless. In order to ensure that minor's claims are carefully scrutinized, Louisiana courts and the Fifth Circuit have found the statutory scheme to compel prior approval of a settlement or compromise of such claims.

As previously mentioned, the <u>Johnson</u> court noted the duty of tutors to seek and obtain prior court approval before compromising a minor's interests. In <u>Succession of Helmers</u>, 637 So.2d 1302, 1308 (La.App. 4th Cir. 1994), the court noted that "even if [the appellant] was appointed tutor Court

**12**

approval was required before [the appellant] could act for the minors to sign the satisfaction of judgment." In Snowden v. Huey P. Long Memorial Hospital, 581 So.2d 287 (La.App. 3rd Cir. 1991), the court set forth the procedure governing settlement of minor claims. "In approving a minor's settlement, a court must not only grant authority to compromise to the party properly representing the minor, but must also determine whether the terms of the proposed compromise are in the best interests of the minor." Id. at 289-90 (footnote and citation omitted). The implication of such language is clear—the court must have some meaningful exercise of authority over proposed compromises and settlements. Obtaining post hoc judicial approval of a consent judgment as Carter planned would tear away at the usefulness and underlying concerns of article 4271 itself. As one commentator observed, "[w]hen tutors attempt to compromise the claims or modify the obligations of their wards without receiving prior judicial approval, their actions are absolute nullities . . . ." Oppenheim at 493.

Because the consent judgment in this case is void, we affirm the district court's decision to set it aside.

## V.

### THE TRIAL

Having vacated the consent judgment, we now turn to Carter's arguments which stem from the trial on the merits. She avers that the jury's verdict is inconsistent with the law applicable in this case and that this court should grant a judgment in her favor as a matter of law. She urges that 1) the jury's decision should be reversed and/or a new trial granted because the evidence presented at trial shows that Fenner and Tallant were objectively unreasonable in their use of force against Braud; 2) the trial judge committed reversible error in permitting testimony regarding Braud's alleged prior violent behavior in the home; and 3) the trial judge erred in allowing a coroner testifying as an expert witness to testify regarding the behavior of a person who is under the influence of alcohol. We consider each of these claims separately.

## VI.

13

Under <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 368-70 (5th Cir. 1969) (en banc), this court must uphold the jury's verdict against Carter unless the evidence, viewed in the light most favorable to the City, required a reasonable jury to find in Carter's favor. <u>Crest Ridge Construction Group, Inc. v. Newcourt Inc.</u>, 78 F.3d 146, 150 (5th Cir. 1996). "The aim of the Court on review is to determine whether a rationale jury could reach the conclusion that the jury actually reached." <u>Woodall v. City of El Paso</u>, 49 F.3d 1120, 1124 (5th Cir. 1995) (citing <u>Fields v. J.C. Penney Co.</u>, 968 F.2d 533, 536 (5th Cir. 1992)). This court has recognized:

> If the facts and reasonable inferences therefrom point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict, viewing the facts in the light most favorable to the party against whom the motion is made, and giving that party the advantage of fair and reasonable inferences which the evidence justifies, then a motion for judgment as a matter of law should be granted.

<u>Id.</u> (citing <u>Hamilton v. Grocers Supply Co., Inc.</u>, 986 F.2d 97 (5th Cir. 1993)). Finally, a motion for a new trial based on evidentiary grounds should not be granted unless, at a minimum, the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence. <u>Dawson v. Wal-Mart Stores, Inc.</u>, 978 F.2d 205, 208 (5th Cir. 1992) (citing <u>Conway v. Chemical Leaman Tank Lines, Inc.</u>, 610 F.2d 360, 363 (5th Cir. 1980)).

## VII.

### THE JURY'S VERDICT REGARDING EXCESSIVE FORCE

Carter argues that the evidence presented at trial "overwhelmingly" indicates that Fenner violated Braud's constitutional rights under 42 U.S.C. § 1983 so as to require this court to conclude that no reasonable jury could have found in favor of the defendants. She argues that the jury's verdict that the defendants were objectively reasonable in shooting Braud is incorrect and should be set aside by this court. Carter further observes that the jury's verdict is also inconsistent with applicable law in this case, which provides that an officer is objectively reasonable in using excessive force where a suspect threatens the officer with a weapon or creates a belief that the suspect will assault the

14

officer or others with a deadly weapon.  Stroik v. Ponseti, 35 F.3d 155, 158 (5th Cir. 1994).  Carter argues that Braud was unarmed and thus presented no threat to the officers and that the evidence illustrates that he was fleeing from the officers at the time of the shooting. The City counters by reminding us of the trial judge's observations:

> . . . the Court finds that sufficient evidence exists to support the jury's verdict. Both sides presented contradictory eyewitness testimony, and the outcome hinged on this credibility question.  The testimony of Tallant and Fenner supported a verdict for the defendants.  The jury was entitled to believe these witnesses and disbelieve others.  See Boyle v. Pool Offshore Co., 893 F.2d 713, 717 (5th Cir. 1990) (the credibility of witnesses is for the jury to determine).  Thus the Court is unable to conclude that no reasonable jury could have found as this jury did.

The City identifies the elements necessary to prove an excessive force claim under § 1983 as 1) a significant injury,[8] which 2) resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was 3) objectively unreasonable.  Johnson v. Morel, 876 F.2d 477, 480 (5th Cir. 1989) (en banc).  Noting that the second element requires a showing that the force used was not only excessive, but clearly more than the force needed to subdue the threat, the City argues that Carter failed to bring evidence to prove these elements were met. Thomas v. Frederick, 766 F. Supp. 540, 554 (W.D. La. 1991).  The City advances that in order to determine the objective reasonableness of the use of force in a particular situation, the trier of fact must judge from the perspective of a reasonable officer on the scene.  Graham v. Connor, 450 U.S. 386, 396-97, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

We find that in view of the conflicting evidence, Carter has failed to prove that the elements of an excessive force claim were met.  The jury heard evidence sufficient to allow it to conclude that the officers were objectively reasonable in shooting Braud.  The testimony of both officers indicates that they were informed by the police dispatcher that the suspect, known as "Vergil," was possibly armed and was possibly selling drugs.  Fenner testified that upon arriving at the scene and performing

---

[8]This requirement has been deleted.  See Hudson v. McMillan, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Knight v. Caldwell, 970 F.2d 1430 (5th Cir. 1992).

the initial patdown frisk, he found a black film canister on Braud's person which appeared to contain marijuana. Fenner suggested that it was at this point (once the officers had probable cause and were preparing to arrest Braud) that Braud began to fight with the officers and resist their attempts to handcuff him. Fenner further testified that because of Braud's behavior, the officers did not have an opportunity to conduct a complete search for weapons. The accounts of various witnesses differ markedly as to the particulars of the ensuing struggle and whether they saw Braud reaching for Tallant's weapon at the time Fenner shot him. The testimony indicates, however, that the witnesses all agreed that a struggle did occur and that it was violent enough to carry Tallant and Braud to the ground, where the struggle continued.

Carter's witnesses offered a range of testimony as to the events that occurred just prior to the shooting. Some testified that Braud was resisting arrest at the time of the shooting, while others suggested he was running away from the officers. Still other witnesses were unclear as to what Braud was doing at the time Fenner shot him. The coroner, Dr. Paul McGarry, testified that he found bruises and contusions in Braud's brain tissue during his autopsy—evidence that Carter contends is illustrative of excessive force. The City maintains that the evidence of bruises indicates that there had been a struggle, and the other physical evidence presented at trial supports the officers' testimony that Fenner fired at Braud in self-defense and to protect his partner's safety.[9]

Considering the evidence in the light most favorable to the defendants, we do not find that Carter directed us to evidence which requires us to conclude that no reasonable jury could have found in favor of the defendants. She failed to prove the elements required for an excessive force claim pursuant to § 1983 and thus her Rule 50(b) motion to set aside a jury verdict and render judgment as matter of law must be denied. Further, because the jury verdict was not against the great weight of evidence, we cannot find that Carter is entitled to a new trial.

**VIII.**

---

[9]The physical evidence admitted at trial indicated that Braud was shot once in the chest at a downward angle consistent with a position on the ground, and that his blood alcohol concentration was .18.

**THE TESTIMONY REGARDING BRAUD'S BEHAVIOR IN THE HOME**

Carter exhorts us to conclude that the trial judge erred in admitting the testimony of Tahara Braud and Esteen addressing the issue of violence displayed in the home by Vergil Braud. Carter argues that such testimony was admitted over her objections, and was nonprobative and therefore irrelevant. Noting that "[t]he violence in the home to which the witnesses testified had no bearing on the police officer's decision to restrain Vergil Braud by inflicting him with a fatal gun shot wound[,]" Carter contends that this information was completely unrelated to what occurred at the scene of the shooting. She allows that even if the evidence was relevant, it should have been excluded because its prejudice to the plaintiffs greatly outweighed its probative value. The City points out that the admissibility of such testimony was the subject of a motion in limine filed by plaintiffs and ruled upon prior to trial. The City contends that the trial court permitted only very limited and general testimony to be introduced to the effect that Braud had engaged in violent behavior in the home, but did not permit detailed questioning of such incidents.

We find that the court's ruling on the admissibility of this evidence struck an appropriate balance between the probative value of such evidence and its possible prejudicial effect. Further, because of Carter's attempt to present testimony regarding Braud's lack of resistance and passivity, the City was entitled to bring limited rebuttal evidence of Braud's violent behavior, solely in order to support its contention that he did resist arrest.

**IX.**

**THE CORONER'S EXPERT TESTIMONY**

Arguing that the coroner was not qualified to offer an opinion on the behavior of people (and, specifically, Vergil Braud) under the influence of alcohol, Carter urges that the admission of such testimony was an abuse of the trial judge's discretion. We find that Carter's position is untenable.

The plaintiffs presented Dr. McGarry as a coroner and an expert in forensic pathology whose qualifications included a degree in medicine. On cross-examination, testimony was elicited from

17

McGarry regarding Braud's blood alcohol level at the time of death and the general effect of alcohol on a person's behavior. Such testimony was allowed because these topics fall well within the expertise of a medical doctor as well as McGarry's extensive experience in dealing with persons acting under the influence of alcohol.

While Carter complains that such testimony was mere speculation, we find that it goes to the heart of the disputed question whether Braud's behavior was so combative and threatening as to support the officer's perception that he was about to inflict bodily harm upon one of them. Carter's argument that the admission of this testimony warrants the court's setting aside the verdict or granting a new trial is thus without merit.

## X.

### CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision, finding that the district court 1) properly set aside the consent judgment pursuant to Rule 60(b)(4), 2) properly refused to disturb the jury's verdict, and 3) made no error in admitting evidence so as to warrant plaintiff's motion for a new trial.