**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 3, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-30057

_____

CALLON PETROLEUM COMPANY,

Plaintiff-Appellee,

versus

FRONTIER INSURANCE COMPANY,

Defendant-Appellant,

GREGORY V. SERIO, Superintendent
of Insurance for the State of
New York, as Rehabilitator of
defendant Frontier Insurance Company,

Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

Before JOLLY and WIENER, Circuit Judges, and ROSENTHAL, District
Judge.[*]

E. GRADY JOLLY, Circuit Judge:

Callon Petroleum Company ("Callon") brought this diversity
action against Frontier Insurance Company ("Frontier") to collect
on a bond it had issued in Callon's favor, and moved for summary
judgment. Frontier subsequently became represented by Gregory
Serio, the New York State Superintendent of Insurance as
rehabilitator ("Superintendent"), who failed to respond to the

_____

[*] District Judge of the Southern District of Texas, sitting by
designation.

motion, and the district court granted summary judgment. Over a year later, the Superintendent, after three notices of the judgment, moved to have the adverse summary judgment vacated under Fed. R. Civ. P. 60(b). We hold that the judgment was not void, and that the district court did not err in denying relief from the judgment under Rule 60(b)(4). The crux of our reasoning in affirming the denial of relief under Rule 60(b)(6) is simply that the Superintendent offers no plausible excuse for ignoring the judgment for some fourteen months. We therefore conclude that the district court did not abuse its discretion and affirm its denial of the Superintendent's motion.

I

In December 1997, Callon entered into an agreement with Wood Energy Company ("Wood"), in which Callon assigned its interest in certain mineral leases to Wood. Under the agreement, Wood agreed to plug and abandon the incident oil and gas wells, and to guarantee its performance with a bond in Callon's favor. Subsequently, Frontier, as surety, issued a bond for $2.7 million in Callon's favor.

In August 2000, the Louisiana Commissioner of Conservation demanded that Wood plug and abandon the wells. When Wood failed to respond, the Commissioner demanded that Callon, as the wells' owner, perform the work. In turn, Callon demanded that Frontier comply with the Commissioner's demand, or pay Callon the $2.7 million payable under the bond so Callon could perform the work

2

itself.  Frontier neither tendered the penal sum nor performed the work required.

On May 16, 2001, Callon filed suit, alleging that Frontier was liable under the bond for the cost of plugging and abandoning the wells, and otherwise complying with the Commissioner's terms.  On July 9, Frontier answered the suit but raised no affirmative defenses.  On August 17, Callon filed a motion for summary judgment, which was set for hearing on September 5.

On August 24, 2001, the Superintendent initiated delinquency proceedings against Frontier in the Supreme Court of New York.  On August 27, that court entered an order to show cause (the "Order to Show Cause"), which restrained  Frontier, its officers, directors, shareholders, members, trustees, agents, servants, employees, policyholders, attorneys, managers, and all other persons from the transaction of Frontier's business or the waste or disposition of its property, except as authorized by the Superintendent.  The Order also appointed the Superintendent as Frontier's temporary rehabilitator and authorized and directed him to take possession of Frontier's property and conduct its business.  On September 4, Frontier's counsel provided the Order to Show Cause to Callon's counsel and filed it with the district court.

On September 5, in the absence of any opposing papers from Frontier, the district court granted Callon's motion for summary judgment.  It acknowledged the New York Order to Show Cause but did not consider itself restrained by the Order because disposition of

3

the pending motion was not a transaction of Frontier's business by the restrained persons, as contemplated by that Order. The district court subsequently entered a final judgment against Frontier for $2.7 million.

On October 15, the New York Supreme (trial level) Court entered an order of rehabilitation ("Rehabilitation Order"), making the Superintendent's appointment as rehabilitator of Frontier permanent. In the Rehabilitation Order, the New York court expressly enjoined all persons from prosecuting any actions against Frontier or the Superintendent and from obtaining judgments or making any levy against Frontier's assets. The Superintendent did not file the Rehabilitation Order with the district court until a year later, when he filed it with his Rule 60(b) motion for relief.

As early as October 16, 2001, however, Callon had provided the New York State Department of Insurance with a copy of the district court's final judgment. The accompanying letter stated that Callon considered the judgment final and binding. Then again three months later, in January 2002, Callon wrote another letter insisting on the finality of the district court's order, and demanding the sum owed under the judgment. There was no response from the Superintendent.

On September 5, 2002, a year after the district court granted summary judgment, Callon moved in the New York rehabilitation proceedings to have its claim against Frontier liquidated as a matter of law and fixed at $2.7 million with interest. This action

4

finally prompted the Superintendent, on November 14, to file a Rule 60(b) motion for relief from judgment in the district court. The Superintendent simultaneously filed a motion for stay or dismissal without prejudice pending the outcome of the rehabilitation proceedings. On December 12, after hearing argument, the district court entered an order denying both of the Superintendent's motions. The Superintendent appeals.[1]

## II

The Superintendent argues that the district court erred in denying Rule 60(b) relief for two reasons. First, the Superintendent contends that the judgment is void under Rule 60(b)(4) because the district court entered summary judgment *after* Frontier's delinquency proceedings had begun. Second, the Superintendent argues that the extraordinary circumstances surrounding the delinquency proceedings and the equities of the case weigh in favor of vacating the judgment under Rule 60(b)(6) so that Frontier may have its day in court. Each of these issues

---

[1]Though the Superintendent's notice of appeal designates both a) his Rule 60(b) motion for relief and b) his motion for stay or dismissal, we dismiss the appeal of the latter issue because the Superintendent has failed to brief the issue and has thus abandoned it. Dardar v. Lafourche Realty Co., 985 F.2d 824, 831 (5th Cir. 1993) ("Questions posed for appellate review but inadequately briefed are considered abandoned."); Fed. R. App. P. 28(a)(9)(A) (requiring argument to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

involves a different standard of review and raises distinct legal questions.[2]

A

We first look at whether the judgment is void under Rule 60(b)(4). This Court reviews a district court's denial of a Rule 60(b)(4) motion to set aside a judgment de novo. Carter v. Fenner, 136 F.3d 1000, 1005 (5th Cir. 1998). We have recognized two circumstances in which a judgment may be set aside under Rule 60(b)(4): 1) if the initial court lacked subject matter or personal jurisdiction; and 2) if the district court acted in a manner inconsistent with due process of law. Id. at 1006; see also Jackson v. FIE Corp., 302 F.3d 515, 521-22 (5th Cir. 2002).[3] We take up both considerations in order.

1

The Superintendent contends that at the time of the district court's grant of summary judgment, jurisdiction over Callon's claim

---

[2]The relevant Rule 60(b) text provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void . . . or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60.

[3]Rule 60(b)(4) motions have no set time limit; in this circuit, they need not even be made within a "reasonable time." Carter, 136 F.3d at 1006; New York Life Ins. Co. v. Brown, 84 F.3d 137, 142-43 (5th Cir. 1996).

6

had vested exclusively in the New York Supreme Court. That is, by virtue of commencement of rehabilitation proceedings in the New York state courts, the federal district court in Louisiana no longer maintained jurisdiction over the action.

Callon correctly points out that because federal courts regulate the scope of their own jurisdiction, a Rule 60(b)(4) challenge to jurisdiction should be sustained only where there is a "clear usurpation of power" or "total want of jurisdiction." Nemaizer v. Baker, 793 F.2d 58, 64-65 (2d Cir. 1986); see also United States v. Tittjung, 235 F.3d 330, 335 (7th Cir. 2000) ("Only when the jurisdictional error is 'egregious' will courts treat the judgment as void."). Here, the district court clearly had diversity jurisdiction over the litigation between Callon and Frontier; moreover, the jurisdictional error, if any, in entering judgment after the Order to Show Cause does not appear to be "egregious."

The Superintendent argues, however, that insurance regulation should be an exception to the general rule that state courts are powerless to restrain federal courts sitting in diversity jurisdiction[4]: "Congress has evinced a strong federal policy in favor of deferring to state regulation of insolvent insurance companies as reflected in the McCarran-Ferguson Act and the express exclusion of insurance companies from the federal Bankruptcy Code."

---

[4]See, e.g., Donovan v. City of Dallas, 377 U.S. 408, 412-13 (1964).

7

<u>Munich American Reinsurance Co. v. Crawford</u>, 141 F.3d 585, 595 (5th Cir. 1998) (emphasis added).[5] He further points out that because "insurance regulation has long been recognized as an area of traditional state concern," <u>Gross v. Weingarten</u>, 217 F.3d 208, 223 (4th Cir. 2000), federal courts routinely confront the conflict between their exercise of federal jurisdiction and state laws establishing exclusive claims proceedings for insurance insolvencies.[6] Federal courts normally manage this conflict by exercising <u>Burford</u> abstention to avoid interfering with state rehabilitation proceedings. <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943).[7] Although <u>Burford</u> abstention is generally considered the

---

[5]The McCarran-Ferguson Act, 15 U.S.C. §§ 1011, <u>et</u> <u>seq</u>. (West 2003), reads, in pertinent part: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance". 15 U.S.C. § 1012(b).

[6] This problem also arises in situations involving courts of different states. As relates to the present case, state legislatures (including New York and Louisiana) adopted the Uniform Insurers Liquidation Act ("UILA") and established reciprocal procedures for resolving claims against insolvent insurers. <u>See</u> N.Y. Ins. Law §§ 7408, <u>et</u> <u>seq.</u>; La. Rev. Stat. Ann. §§ 22:757, <u>et</u> <u>seq</u>. Obviously, state legislatures can withhold jurisdiction from their own state courts but cannot control the jurisdiction of the federal courts.

[7]<u>See</u>, <u>e.g.</u>, <u>Clark v. Fitzgibbons</u>, 105 F.3d 1049, 1051-52 (5th Cir. 1997); <u>Barnhardt Marine Ins., Inc. v. New England Int'l Surety of Amer., Inc.</u>, 961 F.2d 529, 531-32 (5th Cir. 1992); <u>Martin Insurance Agency, Inc. v. Prudential Reinsurance Co.</u>, 910 F.2d 249, 255 (5th Cir. 1990); <u>Gonzalez v. Media Elements, Inc.</u>, 946 F.2d 157 (1st Cir. 1991); <u>Law Enforcement Insurance Co. v. Corcoran</u>, 807 F.2d 38 (2d Cir. 1986); <u>Lac D'Amiante du Quebec Ltee v. American Home Assurance Co.</u>, 864 F.2d 1033 (3d Cir. 1988); <u>Hartford Casualty Insurance Co. v. Borg-Warner Corp.</u>, 913 F.2d 419 (7th Cir. 1990);

exception rather than the rule, the insurance insolvency context presents the classic example of the doctrine's goal of preventing "needless conflict with state policy." Burford, 319 U.S. at 327.

We can certainly agree that, had the Superintendent timely moved the district court to dismiss or stay this action on Burford grounds, it would have been proper, if not obligatory, for the district court to have done so. However, these are not the facts before us. In any event, it is clear that the district court had diversity jurisdiction over the case; although federal courts usually apply state law when exercising diversity jurisdiction, they are not automatically stripped of subject matter jurisdiction over claims asserted against an insurer undergoing state insolvency or rehabilitation proceedings. See, e.g., Munich American, 141 F.3d at 595; Martin, 910 F.2d at 254.[8]

In sum, the law does not support the Superintendent's argument that the judgment in Callon's favor is void. This is so because

Grimes v. Crown Life Insurance Co., 857 F.2d 699 (10th Cir. 1988).

[8]Only one federal court has given traction to the Superintendent's argument that the New York rehabilitation proceedings left the district court without jurisdiction to rule on Callon's summary judgment motion. In Insurance Affiliates, Inc. v. O'Connor, the district court held that the UILA divested Colorado courts of jurisdiction "to hear actions involving controverted claims involving out-of-state insurers unless ancillary proceedings have been commenced in Colorado." 522 F. Supp. 703, 706 (D. Colo. 1981). But in Martin, we squarely refused to adopt that position stating, "[a]lthough we agree with the district court that this case should be dismissed, we do not think dismissal should be based on lack of subject matter jurisdiction in federal courts." 910 F.2d at 254-55 (concluding that dismissal under the Burford abstention doctrine was more appropriate).

9

because the district court had jurisdiction at the time it entered the judgment.

2

The Superintendent contends, in the alternative, that the district court's grant of summary judgment was inconsistent with due process, and that for this reason the judgment is void. In support of this argument, the Superintendent raises similar points to those raised in connection with his contention that the district court lacked jurisdiction. We also find them unpersuasive.

As noted earlier, Rule 60(b)(4) relief is warranted if a district court's actions are inconsistent with due process of law. See Carter, 136 F.3d at 1006; New York Life, 84 F.3d at 143. If a court has both subject matter and personal jurisdiction, however, the "only inquiry is whether the district court acted in a manner so inconsistent with due process as to render the judgment void." New York Life, 84 F.3d at 143. Such circumstances are rare because due process in civil cases usually requires only proper notice and service of process and a court of competent jurisdiction. Id. "[P]rocedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack." Id. (quoting Fehlhaber v. Fehlhaber, 681 F.2d 1015, 1027 (5th Cir. 1982)).

Here, Frontier -- and subsequently the Superintendent -- were fully aware of the summary judgment proceedings and had a fully adequate opportunity to be heard: Frontier was afforded the

10

opportunity to brief Callon's summary judgment motion and to appear at oral argument; and the Superintendent had notice that the district court had entered judgment for over a year before he finally acted. Thus, although the Superintendent may argue that he had no opportunity to argue for a stay or dismissal based on the Order to Show Cause before the judgment was entered, he nevertheless had notice of the judgment and ample time to present in a more timely manner his arguments for Rule 60(b) relief; yet he failed to respond for some fourteen months. It seems to us that these facts do not allow the Superintendent to hide his failings behind the skirts of a due process argument.

Accordingly, we find no convincing support for the Superintendent's due process argument, and therefore hold that the judgment of the district court was not void on due process grounds.

B

We turn finally to the question of whether the district court erred in denying Frontier's motion for relief from judgment under Rule 60(b)(6) ("any other reason justifying relief"). We review the denial of Rule 60(b)(6) relief under an abuse of discretion standard. Carter, 136 F.3d at 1005.

The Superintendent advances a number of arguments to support his contention that the district court abused its discretion when it turned its back to his long delayed request for equitable relief. First, he maintains that the circumstances surrounding Frontier's rehabilitation show that neither Frontier's nor his

11

failure to respond to Callon's summary judgment motion was deliberate. The Superintendent contends that this failure occurred because it was "practically impossible," in the nine days between his appointment as rehabilitator and the district court's grant of summary judgment, to determine whether immediate action was required in the case, and that it was "all [he] could do" to notify Frontier's counsel of the injunction contained in the New York order directing the cessation of transacting business on Frontier's behalf. His excuse that he would have acted except for the heightened activity occurring at the particular time is unconvincing when we consider that the Superintendent failed to act for fourteen months.

Further, the Superintendent's excuse is belied to a significant extent by an unpublished opinion of a California appellate court that involves these very rehabilitation proceedings. Serio v. The Superior Court, Nos. G030164, 030165, 2002 WL 31794160 (Cal. App. Dec. 13, 2002). Serio indicates that the Superintendent moved for a stay of California state court proceedings shortly after Frontier's rehabilitation proceedings commenced in New York. There, the parties adverse to Frontier filed summary judgment motions in September 2001, to which Frontier filed opposition motions before the matter was set for hearing on October 23. Id. at *1. After the New York court enjoined all proceedings against Frontier (under the Rehabilitation Order), the Superintendent quickly asked the California court for a stay under

12

the Uniform Insurers Liquidation Act.  In other words, the Superintendent took precisely the kind of action on behalf of Frontier in California that he claims could not be taken here.  Had the Superintendent acted so expeditiously in our case, he may well have secured a stay, or had a different case on appeal.

Second, the Superintendent gamely argues that his request for Rule 60(b)(6) relief was timely and, moreover, that the Rehabilitation Order left it unnecessary for further action to set aside the final judgment.  These contentions rely on the faulty understanding of the UILA as making it unnecessary to move to set aside the district court's judgment given the UILA's designation of the New York court's exclusive jurisdiction for settling all claims against the insolvent insurer.  As we explained earlier, state court injunctions flowing from the UILA's operation simply do not strip the federal courts of jurisdiction.[9]  In addition, Callon's counsel sent two letters -- one dated October 16, 2001 and the other dated January 22, 2002 -- referencing the judgment's finality.  Yet the Superintendent did not act until November 14, 2002.  The district court did not abuse its discretion in determining that, to set aside the judgment it was necessary to act, and that the Superintendent failed to do so in a reasonably timely manner.[10]

_____

[9] See n.8 and discussion, supra.

[10] See, e.g., Pioneer Inv. Servs. Co. v. Brunswick Assoc., 507 U.S. 380, 393 (1993) ("If a party is partly to blame for the delay,

13

In sum, because the Superintendent offers no plausible excuse for ignoring the judgment of the district court -- a judgment of which he was fully apprised -- for some fourteen months, we hold that there was no abuse of discretion by the district court in denying the Superintendent's Rule 60(b)(6) motion.[11]

## III

Accordingly, for the foregoing reasons, the judgment of the district court is

AFFIRMED.

----

relief must be sought within one year under [Rule 60(b)(1)] and the party's neglect must be excusable."); Claremont Flock Corp. v. Alm, 281 F.3d 297, 299 (1st Cir. 2002).

[11]The Superintendent maintains that he has sufficient evidence for a meritorious defense of fraudulent inducement that would preclude summary judgment. Even if Frontier did not waive this defense by failing to plead it in its answer to Callon's complaint, having a meritorious defense does not alone make a case for reversing a district court's Rule 60(b)(6) ruling on appeal. The Superintendent also asserts that the equities of the case militate in favor of Rule 60(b)(6) relief. In support, the Superintendent repeats his argument that Frontier should be given a fair opportunity to oppose Callon's summary judgment motion. While this argument would have carried some weight in a timely Rule 60 motion, it does not support a finding of abuse of discretion in the light of the fourteen-month delay.

14