REVISED MARCH 12, 2009
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 10, 2009

Charles R. Fulbruge III
Clerk

No. 07-10892

THE CADLE COMPANY,

Plaintiff - Appellee,

v.

JAMES E. NEUBAUER; PAMELA D. NEUBAUER,

Defendants - Appellants,

ROGER FISHER,

Trustee - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:01-MC-5

Before DAVIS, STEWART, and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendants-Appellants James E. Neubauer and Pamela D. Neubauer and Trustee-Appellant Roger Fisher appeal from the district court's August 17, 2007 order denying their motions to vacate an earlier order substituting Plaintiff-Appellee The Cadle Company ("Cadle") for the Federal Deposit Insurance Company ("FDIC") in a registered judgment. For the reasons set forth below, we affirm the order.

## I. FACTS

The convoluted factual background to this case may be summarized as follows: In 1985, the Neubauers guaranteed a loan in the amount of approximately $6 million made by Home Federal Savings and Loan Association to First & Sirrine ("the First & Sirrine loan"). Following a series of transactions, Resolution Trust Corporation ("RTC") obtained an interest in the First & Sirrine loan. In September 1992, RTC filed suit in the United States District Court for the District of Arizona against the Neubauers and other defendants for alleged defaults on a total of 14 loans, including the First & Sirrine loan.[1] The FDIC was later substituted as sole plaintiff for RTC. On January 22, 1996, the Arizona district court entered a default judgment under FED. R. CIV. P. 54(b) in favor of the FDIC for over $48 million on all 14 loans, assigning joint and several liability to all defendants.

Cadle obtained an interest in the First & Sirrine loan in 1998 and filed a Notice of Filing of Foreign Judgment in the Northern District of Texas on January 18, 2001 pursuant to 28 U.S.C. § 1963 and registered the judgment in that jurisdiction for purposes of execution. In 2001 Cadle moved to substitute and/or add itself as plaintiff for a portion of the registered judgment, and the district court granted that motion on May 14, 2001. No appeal was taken from that order. In 2007, following lengthy discovery related to execution of the judgment, the Neubauers and Fisher[2] both filed motions to vacate the 2001 substitution order on the ground that Cadle had been improperly substituted. The district court denied the motions to vacate in August 2007 on the ground that its 2001 substitution order was a final order and the Neubauers' and

---

[1] At the time RTC filed suit, the First & Sirrine loan allegedly had an outstanding balance of approximately $4 million.

[2] The district court noted that Fisher is a trustee for trusts owned by the Neubauers, but the exact relationship is unclear.

Fisher's 2007 motions under FED. R. CIV. P. 60(b)(3) were untimely, having been filed more than one year after entry of the substitution order. The Neubauers and Fisher appeal from the court's denial of their motions to vacate.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court's 2007 order denying the motions to vacate is a final order; as such, we have jurisdiction under 28 U.S.C. § 1291.

## III. LAW AND ANALYSIS

In denying the motions to vacate, the district court determined that there was no deficiency in standing or, implicitly, in subject matter jurisdiction. We agree. Standing requires, at a minimum, three elements: injury in fact, a "fairly traceable" causal link between that injury and the defendant's conduct, and the likelihood that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

In Lujan, the Supreme Court explained that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to show standing, but when challenged by a motion for summary judgment, more evidence is required, including "affidavits and other facts." Id. at 561. If such evidence is presented, whether controverted or not, it is accepted as true and survives summary judgment; if the evidence is controverted, standing "must be 'supported adequately by the evidence adduced at trial.'" Id. (quoting Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 115 n. 31 (1979)).

Whatever standard we might apply, Cadle has shown standing. Cadle has not relied merely on allegations in the pleadings; it has presented an affidavit and other evidence. The affidavit of Ethan Swift attached to Cadle's 2001 motion to substitute states in part, "Cadle succeeded to a percentage ownership

in the Judgment. Accordingly, Cadle is a judgment creditor with respect to the Judgment described above." The affidavit also explains the series of transactions by which Cadle obtained its interest in the judgment, with supporting documentation attached. The Neubauers argue that the written documentation that Cadle attached does not establish its precise interest in the judgment, but the Neubauers do not attack the affidavit itself.[3]

We are satisfied that the documents Cadle attached to its 2001 motion to substitute, together with the affidavit, are sufficient to demonstrate—at least with respect to standing—that Cadle has an interest in the judgment. Cadle has satisfied Lujan's minimum requirements: an injury (the uncollected judgment), a fairly traceable causal connection between the Neubauers' alleged nonpayment and that injury, and the likelihood that enforcement of the judgment against the Neubauers would redress Cadle's injury. Cadle must prevail on the standing challenge.

The district court also found that the Neubauers and Fisher had not waived any right to object to the 2001 substitution order, which it concluded was a final order. It characterized the Neubauers' and Fisher's motions as FED. R. CIV. P. 60(b)(3) motions for relief from a final order based on "fraud . . . , misrepresentation, or other misconduct of an adverse party" because the motions alleged that Cadle misrepresented that it had an interest in the Arizona judgment.[4]

---

[3] The Neubauers did attack the earlier affidavit of Mr. Swift attached to the Notice of Filing Foreign Judgment for alleged formal defects, but they do not attack the formally valid sworn affidavit of Mr. Swift attached to Cadle's motion to substitute.

[4] Although the motions to vacate might also fall within Rule 60(b)(6)'s catch-all clause (permitting relief from a final judgment for "any other reason that justifies relief"), the district court explained that the catch-all clause of Rule 60(b)(6) and the specific grounds for relief established in Rule 60(b)(1)–(5) are mutually exclusive, citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988). Therefore the motions, which alleged misrepresentation under Rule 60(b)(3), must be treated exclusively as Rule 60(b)(3) motions.

Because motions under Rule 60(b)(3) must be brought within one year after a final order under Rule 60(c)(1), the court found that the Neubauers and Fisher could not seek relief on that basis over six years after the substitution order was entered. The ultimate question we must decide is whether the 2001 substitution order was a final order; if it was, then the Neubauers' and Fisher's motions were properly characterized as Rule 60(b)(3) motions, and the district court correctly concluded they were untimely.

Before addressing the question of the finality of the substitution order, we first consider whether the registered judgment in the Northern District of Texas was a final judgment. Cadle registered the Arizona judgment in the Northern District of Texas pursuant to 28 U.S.C. § 1963, which provides, in relevant part:

> A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

Id. (emphasis added). Therefore, under the plain language of § 1963, Cadle's registration of the Arizona final judgment in the Northern District of Texas is treated as a final judgment of the Northern District of Texas.

The question then narrows to whether the 2001 substitution order to a final judgment constitutes a final order. "While it is true that most post-judgment orders are final decisions within the ambit of § 1291, not all are. To be final, the post-judgment order must still dispose completely of the issues raised." Motorola, Inc. v. Computer Displays Intern., Inc., 739 F.2d 1149, 1154 (7th Cir. 1984). Here, the district court's 2001 substitution order fully disposed of the issue raised—whether to substitute Cadle as plaintiff in the judgment. Following the order, all that remained was for the court to execute the judgment after computing the amount that Cadle was owed under its interest in the judgment. The district court therefore properly concluded that the 2001

substitution order was a final order.  Accordingly, we affirm the district court's order denying the Neubauers' and Fisher's Rule 60(b)(3) motions to vacate.

## CONCLUSION

For the above reasons, the district court's order is affirmed.

AFFIRMED.

DENNIS, Circuit Judge, dissenting:

I respectfully dissent.

This case presents the question of whether a person who claims to have succeeded to a judgment creditor's interest in a federal court default judgment has standing to enforce the judgment against the judgment debtors. Because I conclude that the plaintiff Cadle has not carried its burden to show that it has a direct concrete interest in the judgment, I must respectfully dissent from the court's opinion affirming the district court's judgment. Instead, I would vacate the district court's judgment and remand the case to it for an evidentiary hearing on the question of Cadle's standing.

The Supreme Court's articulation of the "irreducible constitutional minimum" of standing under Article III is straightforward: the first and most important element is that the plaintiff "must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (quotation marks, footnote, and internal citations omitted). However, as the Supreme Court has recognized, the ability to bring suit is not always limited to the party that suffered the injury; under Vermont Agency of Natural Resources v. United States ex rel. Stevens, an assignee or subrogee of the injured party's claim may also, in some circumstances, meet the requirements of Article III standing. 529 U.S. 765, 771-74 (2000); see also APCC Servcs., Inc. v. Spring Comm. Co., 418 F.3d 1238, 1242-43 (D.C. Cir. 2005); id. at 1250 (Sentelle, J., dissenting).

The assignee standing doctrine recognized by the Supreme Court clearly refers to an actual assignment of an interest that secures a portion of the recovery. See Vermont Agency, 529 U.S. at 773 ("The [False Claims Act] can reasonably be regarded as effecting a partial assignment of the Government's damages claim."). Vermont Agency requires that the putative plaintiff have "a concrete private interest in the outcome of the suit" in order to attain standing.

7

529 U.S. at 772 (quotation marks & brackets omitted) (quoting Lujan, 504 U.S. at 573). A putative assignee plaintiff must both (1) seek to vindicate the injury to the assignor, and (2) hold an interest "consist[ing] of obtaining compensation for, or preventing, the violation of a legally protected right." Vermont Agency, 529 U.S. at 772-73.

In the present case, the filings of the putative assignee Cadle raise serious doubts that the means by which it purports to succeed to the judgment creditor's rights actually give it any share in the enforcement of the judgment against the judgment debtors. Indeed, there are several obvious gaps and non-sequiturs in the alleged transfer or assignment of the rights of the judgment creditor, FDIC, to Cadle.

First, Cadle has not demonstrated that it obtained a participation interest in the loan that is enforceable against the judgment debtors, the Neubauers. The documents and affidavit submitted by Cadle with its motion to substitute itself as a party to the registered judgment do not establish a direct connection between Cadle and the original loan, and there are inconsistencies in the documents themselves, some of which reference the loan in question but others of which only use loan numbers that do not always match the loan number on the Arizona judgment.

Second, even if Cadle had shown that it obtained an interest in the loan underlying the Arizona judgment, it has never produced the participation agreement that would govern the rights arising from that loan. A typical participation agreement provides that the participating bank has a right that is enforceable only against the lead bank and not directly against the debtor. Hibernia Nat'l Bank v. FDIC, 733 F.2d 1403, 1407 (10th Cir. 1984); see also J. Robert Stoll, et al., Lenders That Serve As Indenture Trustees: A Commercial Banking Perspective, in Practicing Law Institute: Real Estate Law and Practice

8

Course Handbook Series (1990) ("Courts uniformly have concluded that, where the borrower is not a party to the participation agreement, the participant in a typical participation agreement has no direct contractual relationship with, and does not have the rights of a creditor as against, the borrower."). It is certainly possible that Cadle did acquire a participation interest governed by a participation agreement that gives them an enforceable right against the debtor, but since it has failed to produce the agreement (or even any testimony as to its contents), it has not presented evidence that would contradict the default assumption.

Further, even if Cadle had obtained a participation interest that was enforceable against the Neubauers, the loan likely ceased to exist before (by merger) or after (by discharge) Cadle obtained it. The Arizona judgment was entered two years before Cadle allegedly obtained the 90% participation interest in one of the underlying loans. At that time the loan was merged into the judgment. See 50 C.J.S. Judgments § 704. Cadle has made no showing that it obtained an interest in the judgment itself from the FDIC. Further, in 1998 the FDIC issued an IRS Form 1099-C indicating that, as of December 18, 1998, the debt had been discharged. While this is not dispositive, see, e.g., Owens v. Commissioner of Internal Revenue, No. 02-61057, 2003 WL 21196200 at *3 (5th Cir. May 15, 2003) (unpublished), Cadle has produced no evidence rebutting the implication that the debt was cancelled at this time.

Standing, of course, is an essential component of federal jurisdiction. A defect in Article III standing is a defect in subject-matter jurisdiction that can be raised by the parties or the court at any time, and a court is required to address such questions when they are present. Henderson v. Stalder, 287 F.3d 374, 379 n.5 (5th Cir. 2002).

The district court considered the Neubauers' standing objections only very briefly in its opinion dismissing the motion to vacate the substitution order as time-barred, and it appears to have misunderstood the necessary relationship between standing and subject-matter jurisdiction. Thus the standing argument was not fully explored or resolved below. Although we have a responsibility to resolve the question of standing where the record on appeal will allow us to do so, see, e.g., Splenlinhauer v. O'Donnell, 261 F.3d 113, 118 (1st. Cir. 2001), the record is not sufficiently developed in this case to support this inquiry. We do not have access to all the documents establishing the chain of interest through which the 90% participation interest in the loan passed, nor do we have the participation agreement or any testimony or evidence as to its provisions. This court has not hesitated to remand cases involving standing questions for further fact-finding by the district court when necessary. See, e.g., Martin v. Morgan Drive Away, Inc., 665 F.2d 598, 602 (5th Cir. 1982); see also Longmire v. Guste, 921 F.2d 620, 625 (5th Cir. 1991); Pelts & Skins, LLC v. Landrenau, 365 F.3d 423, 428 (5th Cir. 2004). As in those cases, we should vacate the district court's judgment and remand for further proceedings.