**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 2, 2013

Lyle W. Cayce
Clerk

No. 12-30539

FEDERAL DEPOSIT INSURANCE CORPORATION, Organized and Existing Under the Laws of the USA,

      Plaintiff–Appellee,

v.

SLE, INCORPORATED; FUTURE REVENUES, INCORPORATED; ROGER J. LEBLANC,

      Defendants–Appellants,

v.

CADLEROCK JOINT VENTURE II, L.P., Successor-in-interest and Assignee from The Cadle Company,

      Interested Party–Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana

Before REAVLEY, PRADO, and ELROD, Circuit Judges.

PER CURIAM:

This case involves an appeal from the district court's order denying Appellants' Federal Rule of Civil Procedure 60(b)(4) motion to vacate. We AFFIRM.

I.

In October 1995, the Federal Deposit Insurance Corporation ("FDIC") filed a complaint against S.L.E., Inc., Future Revenues, Inc., and Roger J. LeBlanc (collectively, "Appellants") for sums due under various promissary notes. In February 1996, Appellants entered into a Stipulated Judgment in favor of the FDIC and against Appellants. The Stipulated Judgment recognized the FDIC as the holder in due course of five promissary notes in original principal sums, and recognized liability against Appellants for various amounts.[1]

In February 2006, CadleRock Joint Venture II, L.P. ("CadleRock") moved *ex parte* to re-open the case to allow CadleRock to file the necessary pleadings to revive the Stipulated Judgment. The next day, the district court granted CadleRock's motion to re-open the case. CadleRock then filed an *ex parte* motion to revive the Stipulated Judgment as it pertained to Appellants (the "Revival Motion"). In the Revival Motion, CadleRock argued that: (1) it was the successor-in-interest and assignee from The CadleCompany, successor-in-interest and assignee from the FDIC; and (2) the Stipulated Judgment remained unsatisfied. CadleRock attached the affidavit of its account officer, Denise E. Harkless, to the Revival Motion to substantiate its claims that CadleRock was the sole owner of the Stipulated Judgment, and that the Stipulated Judgment remained unsatisfied. Soon after, the district court granted the Revival Motion and revived the Stipulated Judgment (the "Revived Judgment") as it pertained to Appellants.

Five years later, in June 2011, CadleRock commenced collection and served Appellants with pleadings identifying CadleRock as the assignee of the Stipulated Judgment. Appellants then moved to vacate and annul the Revived

---

[1] The FDIC's complaint also named Phoenix Financial Group, Ltd. ("Phoenix") as a defendant. The Stipulated Judgment recognized liability against Phoenix as well, but Phoenix entered into a settlement agreement with CadleRock before this appeal. Accordingly, this factual description excludes events pertaining to Phoenix.

Judgment ("Motion to Vacate"). In the Motion to Vacate, Appellants argued that CadleRock did not have standing to file the Revival Motion because it did not move to substitute as a party plaintiff in accordance with Federal Rules of Civil Procedure 25(c) and (a)(3) before filing the Revival Motion. Appellants conceded, however, that "[h]ad CadleRock properly moved to substitute as the plaintiff before filing the Revival Motion, it would have had standing to do so." Appellants also argued in the Motion to Vacate that they were never served with the Revival Motion because it had been filed *ex parte*—and, as a result, they were denied an opportunity to assess: (1) CadleRock's standing to substitute as a transferee of the FDIC, or (2) the amount that CadleRock claimed it was due. Appellants contended that no accounting had been made for several years regarding the balance owed on the Stipulated Judgment and that CadleRock did not include a balance statement in the Revival Motion.

The district court scheduled a status conference and ordered the parties to submit lists of legal and factual issues that they wished to discuss during the conference. Appellants framed the standing issue narrowly in their list of submitted issues, contending that CadleRock did not have standing to obtain the Revived Judgment because it failed to substitute as a party plaintiff under Rules 25(c) and (a)(3). After the conference, the district court denied the Motion to Vacate. Appellants timely appealed the district court's order denying the Motion to Vacate.

## II.

Generally, we review a district court's Rule 60(b) ruling for abuse of discretion.[2] *Jackson v. FIE Corp.*, 302 F.3d 515, 521 (5th Cir. 2002) (citing *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir. 1988)). Rule 60(b)(4) motions, however, "leave no margin for consideration

---

[2] While the Motion to Vacate did not technically refer to Rule 60(b), it maintained that the judgment was void, and Appellants specifically identified Rule 60(b)(4) as a basis for the Motion to Vacate in their list of legal and factual issues presented to the district court.

of the district court's discretion as the judgments themselves are by definition either legal nullities or not." *Id.* (citation and quotation omitted). For this reason, our review of the issues raised in this appeal is "effectively *de novo*." *Id.* (citation omitted).

## III.

Appellants raise three arguments on appeal. First, Appellants contend that the Revived Judgment is void under Rule 60(b)(4) because CadleRock did not have standing to file the Revival Motion in light of its failure to substitute as a plaintiff under Rules 25(c) and (a)(3). Second, Appellants argue that CadleRock's failure to substitute under Rules 25(c) and (a)(3) violated their due process rights. Third, they claim that federal law preempts Louisiana law regarding the revival of judgments. We address each argument in turn.

## A.

Appellants argue that the Revived Judgment is void under Rule 60(b)(4) because CadleRock was required to substitute as a transferee of the FDIC under Rules 25(c) and (a)(3) before filing the Revival Motion, and failed to do so.[3] We disagree.

As an initial matter, Appellants conceded before the district court that "[h]ad CadleRock properly moved to substitute as the plaintiff before filing the Revival Motion, it would have had standing to do so." Therefore, Appellants' standing challenge is a narrow one—namely, whether CadleRock's failure to substitute as a transferee of the FDIC under Rules 25(c) and (a)(3) eliminated

---

[3] As an aside, CadleRock argues that the Revived Judgment is not void under Rule 60(b)(4) because it revived the Stipulated Judgment in accordance with Louisiana procedure, which did not require CadleRock to substitute as a transferee of the FDIC. This argument lacks merit because we have held that state procedural rules involving substitution cannot prevail over the requirements of Rule 25 in federal courts. *See Ransom v. Brennan*, 437 F.2d 513, 520 (5th Cir. 1971) ("Since Rule 25 is a valid procedural rule, it therefore follows that the terms of Rule 25, and federal court decisions interpreting its meaning, control the manner of effecting substitution in the federal courts.").

CadleRock's constitutional standing to file the Revival Motion.[4] Addressing this issue requires us to determine whether Rules 25(c) and (a)(3) impose a substitution requirement. As explained below, we conclude that they do not.

Our analysis begins with the text of Rule 25(c), which provides:

> **(c) Transfer of Interest.** If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3).

Fed. R. Civ. P. 25(c). As reflected above, Rule 25(c) includes permissive language, and does not require transferees to substitute in an action. *See* Wright, Miller, & Kane, Federal Practice and Procedure § 1958 (stressing that Rule 25(c) "is wholly permissive"). Rule 25(a)(3), which governs the service of substitution, provides:

> **(3) Service**. A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner. Service may be made in any judicial district.

Fed. R. Civ. P. 25(a)(3). The rules of service in Rule 25(a)(3) govern any substitution motion that transferees choose to file, but neither Rule 25(a)(3) nor (c) *require* a party to move to substitute. Simply put, to read a substitution requirement into Rules 25(c) and (a)(3) misconstrues their plain terms. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal

---

[4] In supplemental briefing on appeal, Appellants call our attention to two documents that were not included in the appellate record, which the district court's clerk's office filed for the first time after this appeal commenced. Appellants argue that these documents cast doubt over CadleRock's interest in the Stipulated Judgment. We reject this argument because, as explained above, Appellants conceded before the district court that CadleRock would have had standing to file the Revival Motion but for its failure to substitute under Rules 25(c) and (a)(3).

Texts 69 (1st ed. 2012) ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation.").

In spite of the plain language of Rule 25, Appellants rely on two cases in support of their position that CadleRock was required to substitute as a transferee of the FDIC before filing the Revival Motion. *See Cadle Co. v. Neubauer*, 562 F.3d 369, 371–72 (5th Cir. 2009); *United States v. Transocean Air Lines, Inc.*, 356 F.2d 702, 704 (5th Cir. 1966). Both cases are readily distinguishable.

In *Transocean*, a contingent fee agreement granted Transocean's counsel one-third of any judgment that Transocean recovered in a dispute pending in the District Court for the Southern District of Florida. 356 F.2d at 703–04. In the first appeal, we held that Transocean was entitled to awards, and set out the method to determine those awards. *Id*. at 703 (discussing *United States v. Associated Air Trans.*, 275 F.2d 827 (5th Cir. 1960)). On remand, the district court directed Transocean and the government to reach an agreement on the award due under this method. *Id*. at 704. Instead of stipulating to a judgment in the district court, the government granted Transocean a $75,000 credit on a claim of the government against Transocean in an entirely separate proceeding pending in bankruptcy court in the Northern District of California. *Id*. The government arranged the credit with Transocean's trustee in the California bankruptcy proceedings without informing Transocean's counsel in the Florida litigation. *Id*. After the district court in California approved the agreement, the bankruptcy trustee filed a stipulation to dismiss Transocean's claims in the Florida district court. *Id*. Transocean's counsel objected to the entry of such a dismissal, arguing that the effect of the compromise settlement would deprive Transocean's counsel of its one-third interest in Transocean's recovery. *Id*. The district court agreed, and the government appealed. *Id*.

In the second appeal, we affirmed the district court's judgment, concluding that the compromise settlement between the government and the bankruptcy

trustee ignored the rights of Transocean's counsel under the contingent fee agreement. *Id*. at 705–06. Relying on Rule 25, we reasoned that "[t]he adjudication in bankruptcy of Transocean did not, of itself, substitute the Trustee in bankruptcy in the litigation pending in Florida. There should have been a motion and an order. Because the Trustee did not seek to be substituted for Transocean, it did not become a party." *Id*. at 704. Based on this view, we stressed that "[o]nly where there has been a notice of dismissal filed before the filing of an answer or motion for summary judgment, or when a stipulation of dismissal has been filed by all parties, can a dismissal be effected without a court order." *Id*. at 705 (citing Fed. R. Civ. P. 41(a)(1)).

Appellants attempt to extend *Transocean* in order to argue that CadleRock was required to substitute as a transferee of the FDIC under Rule 25 in this case. We disagree for two reasons. First, unlike the situation here, *Transocean* involved two separate legal disputes pending in two federal district courts in different states. Second, *Transocean* involved a stipulation to voluntarily dismiss a judgment that involved a specific party without a court order, which implicated Rule 41(a)(1)(A)(ii) on voluntary dismissals.[5] Even assuming *arguendo* that *Transocean* could impose a Rule 25 substitution requirement in cases that implicate voluntary dismissal under Rule 41, Appellants offer no argument or precedent supporting that this potential requirement should apply when, as here, a case does not involve voluntary dismissal under Rule 41.

---

[5] Rule 41(a) provides:

(a) Voluntary Dismissal.
    (1) By the Plaintiff.
        (A) Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
            (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
            (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a).

*Neubauer*—the second case that Appellants rely on—is also inapposite. 562 F.3d at 369. In *Neubauer*, the appellee obtained an interest in a loan that the Neubauers had previously guaranteed. *Id.* at 370. The appellee filed a Notice of Filing of Foreign Judgment in federal district court and, pursuant to Rule 25(c), moved to substitute as a plaintiff for a portion of that judgment. *Id.* The district court granted the substitution motion and the Neubauers and their trustee moved to vacate the substitute order on the grounds that the appellee had been improperly substituted. *Id.* The district court denied the motion to vacate. *Id.* On appeal, the Neubauers and their trustee argued that the appellee did not establish any interest in the judgment, and thus had no standing to move to substitute. *Id.* at 370–71. On appeal, we affirmed the district court's order denying the motion to vacate after concluding that the appellee did have an interest in the judgment and had standing to substitute. *Id.* at 372. To reach this conclusion, we relied on an affidavit that the appellee attached to its motion to substitute, which stated that it was a judgment creditor with respect to that judgment. *Id.* at 371.

Appellants broadly interpret *Neubauer* as requiring a transferee to move to substitute under Rule 25(c) to enforce its rights with respect to an interest in a judgment. Appellants misconstrue our holding in *Neubauer*. In that case, the appellee had moved to substitute before the appeal—we did not hold that substitution was necessary or required under Rule 25. Moreover, *Neubauer* actually cuts against Appellants' position that CadleRock does not have standing to substitute in this case. Similar to the affidavit in *Neubauer* demonstrating the appellee's interest in the judgment and standing to move to substitute, CadleRock attached an affidavit to the Revival Motion from its accounting officer stating that CadleRock was the sole owner of the Stipulated Judgment. *See id.*

Therefore, in light of Rule 25's wholly permissive terms, we conclude that CadleRock was not required under Rules 25(c) and (a)(3) to substitute as a

transferee of the FDIC before filing the Revival Motion. Accordingly, we conclude that the Revived Judgment is not void under Rule 60(b)(4).

B.

Next, Appellants argue that CadleRock's failure to substitute as a party under Rule 25(c) and (a)(3) violated their due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution. Specifically, Appellants contend that because they did not learn of the Revival Motion until several years after it was granted, they were denied an opportunity to contest or to compel proof of: (1) CadleRock's standing, or (2) the amount CadleRock claims is due. They emphasize that no accounting has been made for several years regarding the balance owed on the Stipulated Judgment and that CadleRock did not include a balance statement in the Revival Motion.

We have held that a judgment may be set aside under Rule 60(b)(4) when "the district court acted in a manner so inconsistent with due process as to render the judgment void." *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 210 (5th Cir. 2003) (internal citation and quotation omitted). The requirements of procedural due process are "flexible and call[] for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). At a minimum, due process requires that notice and an opportunity to be heard "be granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (citation and internal quotation marks omitted).

Both of Appellants' due process challenges fail. As a general matter, Appellants admitted at oral argument that there is no due process requirement to a hearing under Rule 25(c). With respect to standing, we reiterate that Appellants conceded before the district court that "[h]ad CadleRock properly moved to substitute as the plaintiff before filing the Revival Motion, it would have had standing to do so." Moreover, as concluded above, a motion to substitute under Rules 25(c) and (a)(3) was not a prerequisite to CadleRock's

standing. Regarding the lack of accounting, Appellants do not dispute, and conceded at oral argument, that they still have several avenues to secure any relief that they are due from the Revived Judgment. For instance, Louisiana Code of Civil Procedure Article 2031(b) grants Appellants an opportunity to annul the Revived Judgment if they can offer evidence showing that they satisfied their obligation prior to the district court's entry of the Stipulated Judgment. La. Code Civ. Proc. art. 2031(b).[6] Therefore, Appellants still have an opportunity to be heard with respect to any relief that they are allegedly due.

For these reasons, Appellants' due process challenges fail.

C.

Finally, Appellants argue that the Supremacy Clause of the United States Constitution preempts Louisiana procedures on revival of judgments because those procedures conflict with Rules 69(a)(1) and 25. The Supremacy Clause provides that federal law "shall be the supreme Law of the Land[,] any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. It mandates that we "invalidate state law only if it conflicts with a federal statute." *Matter of Gary Aircraft Corp.*, 681 F.2d 365, 369–70 (5th Cir. 1982). Absent explicit preemptive language, state law conflicts with federal law when "compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983) (internal quotations and citations omitted).

Rule 69(a)(1) requires parties to follow state law procedure in execution of money judgments and in proceedings supplementary to and in aid of judgment

---

[6] Specifically, Article 2031(b) provides that "[a]t any time after the signing of judgment of revival, the judgment debtor may, by contradictory motion, have the judgment of revival annulled, upon showing that the judgment which has been revived was in fact satisfied prior to the signing of the judgment of revival." La. Code. Civ. Proc. art. 2031(b).

or execution (which includes the revival of judgments), with one important exception—that a federal statute governs where it applies. *See* Fed. R. Civ. P. 69(a)(1).[7]  Appellants concede that CadleRock followed proper procedure to revive the Stipulated Judgment under Louisiana law, but argue that these procedures conflict with Rule 25 because they do not require transferees to substitute as a party.  Appellants' preemption claim assumes that Rule 25 requires a party to substitute, which we have rejected above. Given that Appellants have not shown an actual conflict between federal and state law, their preemption claim fails.

## IV.

For the foregoing reasons, the district court's order denying Appellants' Rule 60(b)(4) motion to vacate is AFFIRMED.

---

[7] Rule 69(a)(1) provides: "A judgment is enforced by a writ of execution, unless the court directs otherwise.  The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  Fed. R. Civ. P. 69(a)(1).